LOTHER LEE CUNNINGHAM *v.* STATE OF INDIANA.

[No. 169S20. Filed March 9, 1971. Rehearing denied April 20, 1971.]

*Frederick J. Graf,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Hassett,* Deputy Attorney General, for appellee.

ARTERBURN, C.J.—This is an appeal from the Marion Criminal Court, Division I, where the defendant entered a plea of not guilty to the charge of first degree murder. The jury returned a verdict of guilty of second degree murder and the defendant was sentenced to the Indiana State Prison for life.

The facts indicate that on March 4, 1967, Mary Massey, the decedent, told the police that the appellant had threatened her, making some mention of a gun. On March 6, 1967, the decedent purchased a .22 caliber revolver. Also, sometime around March 1, 1967, the appellant had Claudia Jackson buy him twelve .32 caliber bullets.

On the date of the killing, March 15, 1967, the appellant said that he was going to kill the decedent sooner or later. This conversation was overheard at about 1:30 p.m. Then, at about 6:45 p.m. that evening, appellant told Claudia Jackson to tell Mary Massey that somebody wanted her on the phone. Claudia went to Mary Massey's house and gave her the message. Before leaving the house with Claudia, the decedent took her gun from under a sofa pillow and put it in her pocket. Mary Massey and Claudia Jackson were walking on the sidewalk when the appellant came from across the street and grabbed the decedent. Witness Claudia Jackson testified:

"... so about that time Cunningham ran across the street and told us don't nobody want you on the telephone, he said I want you and he grabbed her in the collar and spinned her around to him and he shot her between the eyes and the other two in the heart and when she fell, she fell off the curb, she was crawling back up on the curb and Cunningham started shooting so about this time I ran home."

In a written confession, the defendant himself stated:

"I grabbed the gun out of her hand and started shooting at her . . . I also emptied the .32 revolver at her when I fired the .22 revolver."

Appellant first argues that the verdict of the jury was not sustained by sufficient evidence, and that therefore the verdict was contrary to law.

The testimony of eye-witness Claudia Jackson, quoted pre-

viously, and the confession of the defendant are sufficient to sustain a finding of guilty. In addition, there was substantial circumstantial evidence implicating the defendant.

Defendant next contends that the court erred in admitting into evidence certain photographs of the victim taken during an autopsy, claiming the photographs were irrelevant and highly inflammatory. In *Wilson* v. *State* (1966), 247 Ind. 680, 221 N. E. 2d 347, this Court stated that the jury should have all relevant evidence and that therefore even gruesome pictures are admissible so long as they prove an important issue in the case. In the case before us, the photographs were relevant in that they showed the location and nature of the decedent's wounds which would assist the jury in understanding the violence and the purpose of the assault.

At the trial Officer Williamson testified regarding a conversation he had with the decedent and the defendant some eleven days prior to the time the decedent was killed. The officer testified that after a call had been made to him he went to a place where he found the decedent and the appellant. The officer stated that both the appellant and the victim, Mary Massey, were present and that a conversation took place between the three of them. He stated: "They both complained of the other had been threatening and disturbing. Mrs. Massey stated that . . ." The transcript of the testimony relating thereto reads as follows:

"Q. What did you do upon arrival?
A. Well, upon my arrival I talked to Mrs. Massey and to Mr. Cunningham. They both complained of the other had been threatening and disturbing. Mrs. Massey stated that . . .

MR. MELANGTON: I am going to object to this for the reason as previously stated.

THE COURT: I beg your pardon?

MR. MELANGTON: I am going to object to this as hearsay.

*THE COURT:* Well, I think the Officer has testified here, Mr. Melangton, that both the defendant and the decedent were present and had a conversation with them in each other's presence.

*MR. MELANGTON:* That doesn't make it not hearsay, Your Honor, there is no way I can cross examine what Mary Massey said.

*THE COURT:* I think that it is an exclusion to the hearsay rule. I am going to overrule the objection.

Q. Now, Officer, relate to the jury what you said, what Mr. Cunningham said and what Mrs. Massey said.

A. Upon my arrival I first talked to Mr. Cunningham and I asked him what the trouble was, there was some bit of confusion but from what I could determine Mr. Cunningham was complaining that Mrs. Massey was not properly taking care of the children. I then asked Mrs. Massey for her views on this and she stated, to the best of my recollection, that she did take care of the children and that Mr. Cunningham had threatened her.

Q. Did she specify any threat?

A. No, sir, she did not. There was some mention of a gun but I don't remember the details.

Q. Did you search anyone for a gun?

A. I did.

Q. Who?

A. I searched the defendant, Mr. Cunningham.

Q. And at that time did you find a gun?

A. I did not, sir."

As the record shows, the appellant objected because this testimony was "hearsay." In our opinion, this is testimony relating to the threats made by the appellant prior to the alleged homicide. It is a conversation in the presence of the appellant, who in fact participated in the conversation. We might incidentally mention that to exclude the testimony of the victim, in a conversation in which the appellant participated, would in many instances make the testimony unintelligible. Nevertheless, the law is well settled

that a conversation between a defendant and a third party, which is relevant and throws light upon the transaction involved, *is not hearsay* and does not come within the hearsay rule.

A statement of a victim "You threatened me" and the answer of the defendant "Yes, I did" would be admissible in a case of the character we have here. This goes to show threats and animosity, which certainly is relevant. To say that only the statement of the defendant, "Yes, I did", would be admissible, has no meaning unless the other side of the conversation in which the defendant participated goes into evidence to explain his statement.

It has always been the law that conversations in which a party takes part that are relevant to issues in the lawsuit, whether civil or criminal, are admissible. It is not hearsay, but is in fact direct evidence of the admissions of the defendant or party to the lawsuit. The defendant, being present, may give direct testimony as to his expressions, or may deny the same. He can confront the witness who testified who was present while he was present. In our opinion, this does not come within the hearsay rule but is a direct piece of testimony.

We note also that the appellant, when he took the stand, referred to the visit of the police officer at the time of the alleged conversation and he neither denied nor admitted that he made threats at that time. This evidence was competent for no other reason than to show that threats were made by the appellant prior to the alleged killing, and the character of the threats is revealed by the full conversation. We find no error in the court's finding. 22A C.J.S., *Criminal Law*, § 607.

The judgment of the trial court is affirmed.

Givan, Prentice, DeBruler and Hunter, JJ., concur.

NOTE.—Reported in 267 N. E. 2d 181.