Willie SMITH, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 285S57.

Supreme Court of Indiana.

March 26, 1986.

Susan K. Carpenter, Public Defender,
June D. Oldham, Deputy Public Defender,
Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Willie Smith was found guilty by a jury in the St. Joseph County Superior Court of the crime of murder, and he was also found to be an habitual offender. The trial court subsequently sentenced him to a term of seventy (70) years.

Five issues are presented for our consideration in this direct appeal as follows:

1. exclusion of testimony of victim's declaration shortly before she died;

2. sufficiency of the evidence;

3. the giving of State's Instruction No. 6;

4. permitting the habitual offender count to be amended; and

5. ineffective assistance of counsel.

The facts show that sometime prior to September 7, 1983, Defendant-Appellant Willie Smith lived with victim Judy Sanders and their small daughter. Shortly prior to the incident in question there had been an altercation between the two and Sanders had shot Smith in the right hand with a handgun. There was evidence that this came about when Smith was holding Sanders' small daughter at knife point and threatening to harm her. Smith denies that he held a knife to the daughter's throat. Smith got treatment for his injured hand at the hospital and then returned to the residence. Sanders had left to go to her grandmother's home.

Smith's account of what happened on September 7, 1983, at trial was that he returned from the hospital and was resting on the couch. He stated that since he was concerned about Sanders' previous attack on him, he had a gun under the pillow on the couch and had another gun concealed in the room. At one point the testimony seemed to be the second gun was hidden in the bookcases and at another time it appeared it was lying on the table in front of the davenport. While Smith was resting on the couch he heard a noise and then saw Sanders standing over him with a butcher knife. She kicked over the table in front of the couch and started to walk around it toward him. There was testimony that she had called and said she was going to get pain pills for him. At this point when Sanders approached Smith with the knife, she said, "Here are the pills but I ought to kill you." He stated he got off the couch and walked around the table with the gun concealed under the pillow and moved about the house trying to evade Sanders. He backed into the dining room at which time she stated, "One of us got to die." She then lunged at him with the knife. He said at this point he shot her the first time but she kept coming so he kept firing at her while he was backing away. She then dropped the knife, which hit him in the chest, and ran out the door. She was found on a neighbor's property, dead from several gunshot wounds.

Testimony of several witnesses varied from Smith's account of the facts. After Sanders shot Smith in the hand, Smith, in discussing the matter with a police officer, told her that he did not have a gun but was going to get one and kill Sanders. The police officer stated that at the time Smith was in pain and excited and she did not really take his statement seriously. She said it was not unusual for people to make such statements under such circumstances. Barbara Olmstead testified that Smith told her that Sanders "snuck into the house and he shot her five times." Officer William Coar was at the scene of the crime and was told by Smith that Sanders had shot him in the right hand earlier in the morning. He had returned home from the hospital and was sleeping on the couch when he received a call from Sanders stating that she was coming back to their residence to bring him some medicine. He then put the gun beneath the pillow that was under his head because he feared for his life. When Smith awoke, Sanders was standing over him with a butcher knife and saying "Here are the pain pills but I ought to kill you." She then went to the bar in another room and sat at a stool. Smith then saw Sanders

open her purse and thought she was getting a gun so he stood up and fired several shots. Sanders did not have a knife at that point. Sanders ran out of the house. Officer Timothy Corbett said that Smith told him that he was lying on the couch drunk when Sanders came up to him with a knife and he shot her five times. Transportation Officer Narvel Williams testified Smith related to Williams that when Sanders came in she kicked over a table and told Smith she was going to kill him. Smith said he then got up off the couch with the pistol concealed under the pillow. When Sanders slung her purse over her shoulder, he reacted to the move by dropping the pillow and firing at her. Smith did tell Williams there was a knife involved and someone should go back and find the knife. A large knife was found on the dining room floor and admitted into evidence.

## I

At trial defendant Willie Smith testified on his own behalf and presented a defense of self-defense. He described in detail the incident leading to the shooting of Sanders and attempted to relate the conversation between them in his testimony. The trial court permitted Smith to testify as to what he said to Sanders but sustained objections by the State on statements made by Judy Sanders to Smith. Smith particularly claims he was precluded from effectively presenting his self-defense when the court would not permit him to testify that when Sanders first came at him with the knife she said to him, "I should have gotten you before—I should have killed you before." The court did allow the threat made by Sanders to Defendant in the dining room that, "One of us got to die," to be presented to the jury. Smith was permitted to testify at length about his repeated pleadings with Sanders as he backed away from her that she must put down the weapon and they must settle the issue between them. He stated he told her he was willing to leave and never bother her or her daughter again if that was what she wanted. He now claims it was reversible error for the court not to allow into evidence some of the statements made by the decedent while holding the knife since it clearly was relevant to his claim of self-defense and explained his subsequent shooting the victim.

The State objected to the statements of Sanders, claiming they were inadmissible hearsay. Although the trial court sustained the objections and did not admit Sanders' statements, no reasons for the exclusions by the trial court were given. We therefore can only surmise that the trial court considered Sanders statements to be inadmissible hearsay. Hearsay evidence is testimony in court or written evidence of a statement made out of court being offered in court as an assertion to show the truth of the matters asserted therein. *Wagner v. State* (1985), Ind., 474 N.E.2d 476. There is merit to Appellant's contention that the import of presenting Sanders' threats was to show Defendant's perspective based on what he heard and saw and to support his defense that his subsequent actions against the victim were in self-defense.

Therefore the statements were not put into evidence to show the truth of the matters asserted therein but to show the circumstances presented to Defendant which resulted in his acts that led to her death. *Carter v. State* (1982), Ind., 438 N.E.2d 738. Therefore, the statements that Sanders made to Smith during this incident were just as pertinent as the statements he made to her in relation to this issue. It is true that the statements of both of them tended to be self-serving to the defendant since Sanders was not able to speak at all. This, of course, would go to the weight of Defendant's testimony and it is apparent here that the jury made a determination Defendant did not act in self-defense. It does appear the trial court erred in excluding some of the statements made to Sanders during the incident while admitting his statements. However, in looking at all the facts and circumstances, it appears such error was harmless. We find it to be harmless because Defendant did testify at length about the incident and was permit-

ted to testify as to some of the statements made by Sanders, including, "One of us got to die." He testified at length about her coming at him with a butcher knife and described his efforts to escape from her and talk her out of killing him. He said he kept the gun concealed and did not use it until it was apparent he had to use it to save his own life. The incidents where the court excluded statements of Sanders presented testimony that was no more than cumulative of other statements in his testimony. Furthermore, some of the statements made by Sanders were put into evidence by other witnesses, particularly police officers, who testified that Defendant had told them of certain statements made by Sanders during the altercation. There also was a great deal of evidence from which the jury could reasonably have found Defendant did not act in self-defense, particularly from conflicting statements Smith made to other persons. As we recounted above, he told one police officer he was going to get a gun and kill Sanders, he told another after the incident that Sanders was in an adjoining room, *without a knife*, and Smith thought she was going for a gun in her purse so he shot her, and he told yet another police officer that she slung her purse over her shoulder and he reacted by shooting her. Defendant was able to amply present his defense of self-defense and the items excluded by the trial court were of minimal consequence. We accordingly find no reversible error on this issue.

## II

■ Defendant further claims there was insufficient evidence to support the verdict of the jury since there was not substantial evidence of probative value to support every element of the crime charged. Defendant's sufficiency argument goes solely to the issue of self-defense. From the facts recounted in Issue I above it is apparent that although there was conflict in the evidence, there was more than ample evidence from which the jury could find beyond a reasonable doubt that Defendant did not act in self-defense. Pursuant to our standard of review we find no grounds to dis-

turb this finding by the jury. *Loyd v. State* (1980), 272 Ind. 404, 398 N.E.2d 1260, *cert. denied* (1980) 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

## III

■ In its final instructions the trial court gave Instruction No. 6 as follows:

"The credibility of a witness may be attacked by introducing evidence that on some former occasion the witness made a statement inconsistent with his testimony in this case. It is inconsistent if the witness denied making the prior statement or if the witness could not remember making the prior statement. Evidence of this kind may be considered by you in deciding the weight to be given to the testimony of that witness as well as substantive evidence of the guilt of the defendant."

Appellant claims this instruction is confusing and misleading since it indicates that evidence of merely making inconsistent statements could be considered substantive evidence of guilt. We see no merit to this argument. The instruction clearly states that evidence of such prior statement can be used to attack the credibility of the witness and further tells the jury that this evidence may be considered by them in deciding the weight to be given the testimony of the witness. Defendant concedes that this same construction was approved by this Court in *Limp v. State* (1982) Ind., 431 N.E.2d 784, (remanded on other grounds). Defendant asked us to reconsider our holding in *Limp*, claiming that *Limp* was based on a mistaken reliance upon *Patterson v. State* (1975) 263 Ind. 55, 324 N.E.2d 482. In *Patterson* this Court held that the out-of-court statement could be used as substantive evidence. Appellant claims this Court used that holding in *Patterson* to authorize the above instruction and thereby implied that the mere making of an inconsistent statement is substantive evidence of guilt. We do not find this reasoning to follow from *Patterson* or *Limp*. This Court's reference to *Patterson* in *Limp* did not go to the propriety of

the giving of the above instruction. There was an additional issue in *Limp* not present here, wherein the out-of-court asserter of the inconsistent statement was in court and available for cross-examination. We therefore held that statement could be used as substantive evidence. Pertinent to the issue here, *Limp* held that the crux of a proper instruction on the effect of a prior inconsistent statement is that it may be considered in evaluating the credibility of the witness. That is what this instruction says and it clearly is consistent with the law. It was therefore properly given by the trial court here.

### IV

■ Defendant claims the trial court committed reversible error by permitting the State to amend the habitual offender count during trial. The amendment substituted for a prior underlying conviction, a prior felony conviction Defendant admitted during his testimony in the guilt phase of the trial. Defendant concedes this but claims he was prejudiced because of a lack of opportunity to show that the amending prior conviction might be in some way constitutionally infirm. He makes no argument showing any evidence or probability of such infirmity nor did he do so at trial. In *Howard v. State* (1978) 268 Ind. 589, 377 N.E.2d 628, *cert. denied* (1978) 439 U.S. 1049, 99 S.Ct. 727, 58 L.Ed.2d 708, we held the trial court correctly permitted the State to amend the information after arraignment to add an habitual criminal count because the habitual criminal statute does not impose punishment for separate crimes but provides a more severe penalty for the crime charged. *Norris v. State* (1979), 271 Ind. 568, 394 N.E.2d 144, *reh. denied. Howard* also stated this type of amendment was permissible if the defendant had sufficient time to know of the charge and properly defend against it. Defendant Smith here had only one of the underlying convictions changed and that was a charge he admitted to in the guilt phase of the trial. He makes no showing or claim that he required, asked for, and was refused time to prepare for defending this particular charge. He therefore presents no facts which would indicate he was prejudiced in any way by the amendment. *Hudson v. State* (1983), Ind., 443 N.E.2d 834. We therefore fail to see any reversible error on this issue.

### V

Finally, Appellant claims reversible error in that he received ineffective assistance of counsel at trial. Appellant concedes the proper standard to be applied on this issue is that of reasonably effective assistance looking at the reasonable probability that but for counsel's unprofessional error the result of the proceeding would have been different. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. This standard was enumerated by this Court in *Lawrence v. State* (1984), Ind., 464 N.E.2d 1291, in which a two step analysis was set out. The first step, the performance component, focuses on the actual performance of the attorney and requires a showing of unreasonable actions or non-actions. The second step, the prejudicial component, focuses on the prejudice which results from the attorney's unreasonable acts.

■ Smith first claims his counsel should have moved to suppress statements made by him to police officers since it is his claim he was so intoxicated his statements were not reliable and therefore not admissible. In support of this argument, Smith points to the testimony of three police officers. This testimony does not support his contentions. The three officers, Terry Miller, Alma Alvarez, and Cullen Walton, testified about Appellant's condition at the time of or immediately after his arrest and did not say he was so intoxicated he could not give a statement. Officer Miller testified it was apparent Appellant had been drinking as he smelled of liquor and mumbled at times. Alvarez and Walton said he was very upset and in an emotional state at the time of his arrest but did not say he was intoxicated. Alvarez stated that he was in a condition that showed he was upset and emotional which she attributed to the oc-

currences between Smith and Sanders including the fact that he had been drinking in the evening prior to that time. All of the officers who testified as to statements made by Appellant on that evening and at later times indicated he was able to converse with them and understood what he was doing. In fact, some of the officers' testimony confirmed circumstances he testified about in an attempt to establish self-defense, including his version that the victim attacked him first with a large knife. It could easily be viewed as trial counsel's appraisal that this would be testimony beneficial to Defendant so that suppression would not be good strategy. It at least was a choice of strategy made by counsel which at this point does not indicate ineffectiveness. Appellant claims his counsel was ineffective in not having the victim's threats made to Defendant before he shot her admitted into evidence. These are the same statements referred to in Issue I above that we found to be admissible but harmless error in their exclusion. Nonetheless, it appears trial counsel did everything he could to have the statements admitted but was overruled by the trial court. Trial counsel cannot be found ineffective when he properly raises an issue at trial and is overruled. The issue was preserved and presented on appeal. Defendant claims his counsel showed poor judgment in calling certain witnesses, including the victim's grandmother, but points to no real prejudice caused by these witnesses. It is apparent the victim's grandmother was called to confirm testimony by Defendant and others that the victim went to her grandmother's between the two altercations had by Defendant and the victim. Since Defendant can point to no fact indicating prejudice by his counsel's choice of witnesses, we find them to be judgment calls of strategy lacking a showing of ineffectiveness. Defendant next makes a general statement that his counsel did not object during the trial a sufficient number of times. He fails to point out any specific time or grounds for objections overlooked by his counsel, thereby waiving this issue. The same can be said of Defendant's

charge that his counsel's cross-examination of certain witnesses buttressed the State's case. Finally, Appellant claims trial counsel concurred and participated in selecting and sending back some of the exhibits to the jury room while the jury was deliberating which he now says allowed prejudicial emphasis to be placed on one segment of the evidence over the other. Appellant fails, however, to point out what materials were permitted to be taken to the jury room and the prejudice resulting from that particular selection. There is no way we can therefore determine claimed error on the selection. *Shaffer v. State* (1983), Ind., 449 N.E.2d 1074, *reh. denied; Thomas v. State* (1972), 259 Ind. 537, 289 N.E.2d 508, *reh. denied,* (reversing because prejudice was shown). Appellant has demonstrated no reversible error in his contentions of ineffectiveness of counsel.

Finding no error, we affirm the trial court.

GIVAN, C.J., and DeBRULER and DICKSON, JJ., concur.

SHEPARD, J., concurs except with respect to Issue IV, believing that the amendment was inherently prejudicial.