Richard C. KOKE, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 45A03–8607–CR–201.

Court of Appeals of Indiana,
Third District.

Oct. 30, 1986.

Nick J. Thiros, Cohen & Thiros, Merrillville, Ellen S. Podgor, Nicholls & Podgor, Crown Point, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Presiding Judge.

Richard Koke was convicted of dealing in cocaine, a class B felony,[1] and received a sentence of two (2) years. On appeal Koke raises the following issues:

I.   The trial court erred in excluding as hearsay conversations of the defendant and the confidential informant.

II.  The trial court erred in permitting the State to discuss during opening argument conversations with the confidential informant when the defendant was prohibited from doing likewise.

III. There was insufficient evidence of defendant's predisposition to commit the crime charged.

IV.  The defendant was unduly prejudiced by the State's delay in bringing charges against the defendant.

V.   Trial counsel was incompetent in his representation of defendant.

The State presented evidence that on July 10, 1984 Officer Ronald Hernandez and a confidential informant, Bruce Krouse, met with a surveillance team before going to Koke's house to try and purchase cocaine. Hernandez was wired with a voice transmitter that could be monitored by the surveillance team. Hernandez testified that Krouse went to the door of Koke's residence and returned to the car with Koke. Hernandez told Koke he wanted an eighth of an ounce of cocaine and Koke told him he was unable to contact his supplier; there was nobody answering the phone. Koke told them to come back later. The surveillance officer testified to hearing a voice which was that of neither Hernandez nor Krouse say, "Let's set something up for tomorrow."

The next day, July 11, according to Hernandez's testimony, he and Krouse went to Koke's home again. Hernandez was fitted with a transmitter again and the surveillance team was nearby.

Twice Koke told Hernandez and Krouse that he was unable to contact his supplier and asked them to return later. Each time Hernandez and Krouse left for twenty or thirty minutes and returned. The third trip back to Koke's, Koke said he had made contact with the supplier and the three men left with Hernandez driving. Enroute, Koke allegedly told Hernandez that they could go to Dolton if they wanted to get good, hard-rock cocaine for three hundred thirty dollars ($330.00), or get average cocaine in Cedar Point for the same price. Hernandez said he did not want to cross the state line, so Koke directed him to the Cedar Point apartment complex. The only conversation heard by the surveillance team was Officer Hernandez counting out money after the threesome arrived at the apartment complex. The poor transmission was variously attributed to distance, weak batteries or other possible interference.

1. Ind. Code 35–48–4–1.

Hernandez testified that Koke directed him to park away from the building because the supplier did not want to meet any new people or let it be known where he lived. Koke went inside the building, but returned a short time later and said the supplier was not home but they were to wait. Sometime later, as Koke waited in front of the building, a car pulled up and a man and woman got out. Koke spoke with them and all three entered the apartment building. About fifteen (15) minutes later, Koke returned and gave Hernandez three small packages, saying it was more than three grams. The three men left the area and Koke was dropped off elsewhere.[2]

## I.

### Hearsay

Before trial, the State made a motion in limine to prevent any mention of the whereabouts of the informant Krouse. Koke's trial counsel intended to introduce evidence of statements made by Krouse to Koke and wanted to make a showing of a good faith effort to locate Krouse in order to take advantage of the Declarant Unavailable exception to the hearsay rule. He cited Federal Rule 804(a)(5) as authority. The trial court granted the State's motion, ruling that Indiana had not adopted the declarant unavailable exception to the hearsay rule. The court also admonished defense counsel not to refer to the matter in opening statement.

Defense counsel's position at trial was and is now that the conversations between Krouse and the defendant are crucial to the defense of entrapment and that the trial court erred in excluding such statements. We agree that the evidence should have been admitted, but hasten to point out that the prosecution, defense counsel, the trial court and appellate counsel for both the State and the defense appear to have labored under the misapprehension that the informant's statements were hearsay in the first place. Thus, the trial court sustained on hearsay grounds the prosecution's objections to evidence of what Krouse said; defense counsel sought to have the statements admitted under a federal exception to the hearsay rule; and appellate counsel argues for admissibility under the *res gestae* and state of mind exceptions to the hearsay rule.

In *Patterson v. State* (1975) 263 Ind. 55, 324 N.E.2d 482, Justice Prentice defined hearsay as "testimony in court or written evidence, of a statement made out of court, such statement being offered as an assertion to show the truth of matters asserted therein, *and thus resting for its value upon the credibility of the out-of-court assertor.*" 324 N.E.2d at 484. In *Harvey v. State* (1971) 256 Ind. 473, 269 N.E.2d 759, Justice DeBruler quoted with approval from Wigmore on Evidence as follows:

"The theory of the Hearsay rule (*ante,* § 1361), is that, when a human utterance is offered as evidence of the truth of the fact asserted in it, the credit of the assertor becomes the basis of our inference, and therefore the assertion can be received only when made upon the stand, subject to the test of cross-examination. If, therefore, an extra-judicial utterance is offered, not as an assertion to evidence the matter asserted, but without reference to the truth of the matter asserted, the Hearsay rule does not apply. The utterance is then merely not obnoxious to that rule. It may or may not be received, according as it has any relevancy in the case; but if it is not received, this is in no way due to the Hearsay rule.

"The prohibition of the Hearsay rule, then, does not apply to all words or utterances merely as such. If this fundamen-

---

2. Koke's version of the events was somewhat different. He testified that Hernandez and Krouse badgered him to make the buy for them and that Hernandez, posing as a construction worker, gave Koke the impression he could get Koke a construction job if Koke would do them this favor. Koke also testified that it was Krouse who quoted the price for the cocaine and Krouse who directed Hernandez to the Cedar Point apartments and told Koke who to see to make the buy. Koke also testified that it was Krouse who made the comment about going to Dolton for good, hard-rock cocaine.

tal principle is clearly realized, its application is a comparatively simple matter. The Hearsay rule excludes extrajudicial utterances only when offered for a special purpose, namely, as assertions to evidence the truth of the matter asserted." 6 Wigmore, Evidence, § 1766 (3d ed. 1940).

269 N.E.2d at 761.

The statements by Krouse which Koke sought to introduce involved Krouse's use of drugs (Record p. 245), his difficulties with the police (Record p. 242) and his repeated requests that Koke do him a favor (Record p. 250, 251, 257). At one point, in response to a prosecution objection, the court admonished defense counsel that "[a]nything the C.I. [confidential informant] said to him is hearsay. I may point out that there is another way of doing this. You can introduce the C.I. and have him available, but that has not been done. You cannot do indirectly what you cannot do directly." Record p. 252.

■ All of Krouse's statements were offered, not to prove the truth of any of the assertions contained in them, but as evidence of the effect they had upon Koke and upon his decision to participate in the drug transaction. An utterance offered to evidence the state of mind which ensued in another person as a consequence of the utterance does not run afoul of the hearsay rule—it simply is not inadmissible hearsay. *Bean v. State* (1978) 267 Ind. 528, 371 N.E.2d 713; 6 Wigmore, Evidence § 1789 (Chadbourn rev. 1976). The fact that the statements were self-serving goes to their weight, not their admissibility. *Smith v. State* (1986) Ind., 490 N.E.2d 300, 302.

Since Koke's counsel did not make an offer to prove on any occasion that an objection was raised on hearsay grounds, the error in excluding the evidence was waived. *Starkey v. State* (1977) 266 Ind. 184, 361 N.E.2d 902. We conclude, however, that the exclusion of Krouse's declarations was harmless. Koke testified that he and Krouse had been friends for a number of years and at the time of the drug buy Krouse was providing Koke with transportation to and from summer school. During direct examination of Koke the following exchange took place:

Q. In the conversation with Bruce on that day as you are going back and forth to school, sir, did he mention again, this buy?

A. Yes sir, he mentioned that he had a friend that was a big wheel and had all kinds of money, and supposedly, you know—

Q. Did he ask you to help him?

A. Yes sir.

Q. He asked you to help his friend?

A. He asked me to meet his friend.

Q. What did he say to you that day on the 10th, sir?

A. On the way to school in the morning he first expressed to me the fact he and this buddy of his had just gone on a crime and gotten a large amount of money and that he and his buddy wanted to get some cocaine and go out partying with a couple of women. They had extra cash, wanted to go to shows and stuff, but he was really afraid of the fact since he was in so much trouble and the police watching him and everying [sic], he didn't want to go up to people he knew because they knew he got in trouble, and I guess he couldn't get it somehow, that is what he expressed across to me.

Record p. 249.

At another point Koke testified:

Q. Who said how much quantity to buy?

A. He did, he and Bruce.

Q. Who said how much it would cost?

A. Bruce Krouse.

Q. He knew exactly the price?

A. Yes.

Q. Who had the money?

A. Officer Hernandez.

Q. From the spot where you made that temporary stop to the time you got

to that complex, did you have any conversation with Bruce Krouse?

A. Yes sir.

Q. And did you draw an opinion from those conversations?

A. Yes.

Q. What was your opinion, sir?

A. My opinion was that I owed him a favor and he wanted me to do a favor for him, and that if I did this, I would probably end up getting a construction job from this big-wheel friend who was working construction at the time.

Record p. 265. Again, he testified:

Q. Did one of the two occupants in that car direct you to a certain apartment?

A. Yes, Bruce told me which one to go to.

Q. Did you go there?

A. Yes sir.

Q. Did he direct you who to talk to?

A. Told me the first name, yes.

Q. Did you do that?

A. Yes sir.

Record p. 266.

■ There were other instances in which Krouse's statements or the substance of them were admitted without objection. Thus, Koke was able to present evidence relevant to his defense of entrapment, specifically that he had no predisposition to sell drugs, but he acted only after repeated urging by his friend. The excluded statements were essentially cumulative of other evidence which was admitted. *See Smith, supra* at 303; *Bean, supra,* 371 N.E.2d at 717. They would have done little to enhance Koke's credibility or corroborate other evidence. Cf. *Nuss v. State* (1975) 164 Ind.App. 396, 328 N.E.2d 747 (exclusion of testimony by a witness regarding threats

made by the victim and communicated to the defendant was harmful error because such evidence would tend to corroborate defendant's own testimony and lend credence to his claim of self defense).

## II.

### *Opening Statement*

■ Koke also argues that it was error to allow the prosecutor, in opening statement, to refer to statements by Krouse when the defense was prohibited from doing so. Defense counsel made no objection at the time, however, so any error in this regard is waived.[3] *Wagner v. State* (1985) Ind., 474 N.E.2d 476.

## III.

### *Insufficient Evidence*

Koke does not deny that the transaction took place, but raised the defense of entrapment which he contends the State failed to disprove.

The defense of entrapment has been specifically authorized by statute. Indiana Code 35–41–3–9 provides:

(a) It is a defense that:

(1) The prohibited conduct of the person was the product of a law-enforcement officer, or his agent, using persuasion or other means likely to cause the person to engage in the conduct; and

(2) The person was not predisposed to commit the offense.

(3) Conduct merely affording a person an opportunity to commit the offense does not constitute entrapment.

Entrapment exists when the defendant has been induced or hired by a governmental agency to commit a crime he had no predisposition to commit. *Baird v. State* (1983) Ind., 446 N.E.2d 342, 344. In order

---

**3.** Since defense counsel was the proponent of evidence regarding Krouse's utterances, he may have deemed it strategically unwise to object to the prosecution's reference to statements by Krouse. Although one such comment may have referred to inadmissible hearsay, (Krouse's assertion that Koke was one of the persons that

dealt coke (Record p. 108) would be inadmissible if offered as evidence of predisposition. *Medvid v. State* (1977) 172 Ind.App. 27, 359 N.E.2d 274, 276), in light of other evidence we do not find it so prejudicial as to require reversal.

to rebut the defense of entrapment, the State must show two things; first, that the level of police activity was not such that it would persuasively affect the free will of the accused, and second, that the accused was predisposed to commit the offense. *Id.* " 'Insomuch as the question of predisposition is a question of subjective intent, it relates to one of the elements of the offense which must be proven beyond a reasonable doubt. The determination of such a question is exclusively for the jury.' " *Schlabach v. State* (1984) Ind.App., 459 N.E.2d 740, 741 (quoting *Silva v. State* (1980) Ind.App., 410 N.E.2d 1342, 1347).

When reviewing the sufficiency of the evidence of predisposition necessary to overcome the defense of entrapment the standard of review is the same as that for any other sufficiency claim. *State v. White* (1983) Ind.App., 454 N.E.2d 87, 90. We do not weigh the evidence or judge the credibility of the witnesses. *Gossmeyer v. State* (1985) Ind., 482 N.E.2d 239, 241. Evidence of the events at the time of sale, as well as circumstantial evidence, may be sufficient to establish predisposition. The defendant's knowledge of prices and sources, possession of large quantities of contraband, ability to access contraband in a short time, willingness to engage in future transactions, eagerness in the present sale and knowledge of slang used are all relevant to the defendant's subjective intent for the purpose of establishing predisposition. *Gossmeyer, supra; White, supra.*

■ There was evidence that Koke was willing to take part in the transaction. He was unable to contact his supplier the first day and suggested they set it up the following day. Hernandez testified that Koke directed him to drive to the Cedar Point apartment complex after giving Hernandez the option of going to Dolton for good, hard-rock cocaine. There was testimony that Koke quoted the price for the amount of cocaine Hernandez requested and Koke did, in fact, deliver three packages to Hernandez which contained cocaine. Although

Koke insists he was an unwilling participant merely doing a favor for a friend, it was for the jury to decide whose version of the events to believe. There was sufficient evidence from which the jury could have found that Koke was predisposed, i.e., had the necessary intent, to deliver cocaine.

## IV.

### *Delay In Charging*

The transaction in question took place on July 11, 1984. Koke was not charged until June 20, 1985. Koke argues that he was prejudiced by the delay because memories had faded and favorable testimony may have been lost.

■ A challenge to the timeliness of prosecution must be raised by a motion to dismiss prior to the conclusion of trial or the issue is waived. I.C. 35–34–1–4(a)(8) and (b). Koke did not make such a motion, therefore, no issue is preserved for appeal. Nevertheless, we have reviewed the record on this issue and find no grounds for reversal.

Ordinarily a charge filed within the statutory limitations period will be considered timely. However, if the prosecution deliberately utilizes delay to strengthen its position by weakening that of the defense or otherwise impairs a defendant's right to a fair trial, an inordinate pre-indictment delay may be found to violate a defendant's due process rights. *Worthington v. State* (1980) Ind.App., 409 N.E.2d 1261, 1269. This court has required the defendant to demonstrate both that he suffered actual prejudice and that there was no justification for the delay in order to successfully raise a due process challenge. *Lusher v. State* (1979) 181 Ind.App. 63, 390 N.E.2d 702, 704.

■ The information in this case was filed well within the limitations period[4] and Koke has shown no deliberate tactic on the part of the State to delay prosecution in order to prejudice the defendant. Officer

**4.** *See* Ind.Code 35–41–4–2(a)(1).

Hernandez testified that on-going investigations and other agencies making drug raids may delay getting the paperwork together and, of course, it is not the police officer's decision when to arrest someone. It is the decision of the prosecuting attorney and it is well-settled that the prosecutor is invested with broad discretion in the decision of such matters as when to prosecute. *Worthington,* supra at 1268.

Koke, moreover, has not demonstrated how he was prejudiced by the instances of non-recall cited in his brief. Many of the instances involved trivial matters or were, in fact, negative answers to questions phrased in terms of "Do you recall ...?"

## V.

### *Ineffective Assistance of Counsel*

Finally, Koke argues that hé was denied effective assistance of trial counsel and lists thirteen (13) separate instances which he claims demonstrate ineffective representation. We have reviewed the record carefully and find that the errors attributed to trial counsel are based upon non-meritorious arguments or were not so egregious as to have "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington* (1984) 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674.

The judgment of the trial court is affirmed.

HOFFMAN and GARRARD, JJ., concur.