Gary SYLVESTER, Defendant,

v.

STATE of Indiana, Plaintiff.

No. 48S00–9608–CR–550.

Supreme Court of Indiana.

July 9, 1998.

Mark Maynard, Hasler & Maynard, Anderson, Thomas D. Chaille, Decker & Lawyer, Anderson, for Defendant.

Jeffrey A. Modisett, Attorney General, Randi F. Elfenbaum, Deputy Attorney General, Indianapolis, for Plaintiff.

SELBY, Justice.

Defendant, Gary Sylvester, admitted that he killed his wife, Debra Sylvester, but claimed that the act was manslaughter and not murder because it was committed under sudden heat. IND.CODE §§ 35–42–1–1 (Murder) and 35–42–1–3 (Voluntary manslaughter) (1993). On April 4, 1996, the jury found defendant guilty of murder and the trial court sentenced him to sixty years imprisonment. Defendant raises the following issues on appeal: whether the trial court erred in denying defendant's Motion for Discharge; whether the trial court erred by excluding statements made by the victim as hearsay; whether the trial court erred in failing to grant a mistrial or admonish the jury when the prosecutor referred to defendant's post-arrest silence; whether the trial court erred in its final instructions by refusing to include defendant's tendered instruction; and whether the trial court erred in sentencing by imposing the maximum sentence. We answer each of these issues in the negative and affirm the defendant's conviction and sentence.

## FACTS

Defendant suspected that his wife, Debra Sylvester, was having an extra-marital affair and that she may have been planning to leave him. Distraught over this possibility, he had commented to co-workers about his frustration on several occasions. Defendant worked for a refuse disposal company in Shelbyville. He had on occasion made statements to David Caves, his step-son, that he could hide a body or get rid of a body through the incinerator and that no one would ever be able to find it. He also commented that if he ever found out that his wife was having an affair he would kill her. Defendant had taken time off work prior to the murder because of his distress, and had told his supervisor that he was upset over the situation with his wife and that if he found out she was having an affair he would kill her. On the day of the murder, defendant had stated to a co-worker that it was past the point of confronting Debra and that the situ-

ation would be resolved after that day.[1] That evening, defendant and Debra engaged in a fight which culminated in Debra's death by strangulation.

David Caves, upon returning home from work that evening, found both the front and rear doors locked, which was unusual. While walking around the house, David looked into the dining room window and saw his step-father in the bathroom, apparently wiping something off of the floor. David knocked on the window and defendant finally responded by telling David to wait. Defendant eventually allowed him to come inside and told David that Debra was asleep in the bedroom and that David's half-sister was visiting a friend. David left to pick up his girlfriend and when they returned, he noticed that the bedroom door lock had been broken, that the bed was in disarray, and that there appeared to be spatters of blood in the bathroom. Defendant then told David that he had hit Debra during a fight and that she had fled the house on foot. David called the Anderson Police Department to see if his mother had reported a battery. Upon learning that she had not, he reported her as missing.

After defendant killed Debra, he wrapped her head with duct tape and placed her body in garbage bags which he taped together, along with the bloody bathmat, robe, and bedspread. He then put her in the trunk of the car, went to a store to cash a check, stopped at a liquor store to buy beer, drove to Wal–Mart to buy a new jacket, and then drove to his work place, where he hid her body under a dumpster near his truck. He then shared some pizza with co-workers and went to sleep at the site to rest before his shift started.

Later that night, two Shelby County police officers were searching the parking lot of the refuse disposal company for a car similar to defendant's on an unrelated incident. Upon finding defendant's car parked in an out-of-the-way location, they ran a check on the license plate and learned that the car belonged to defendant's wife and that they were to detain defendant. Anderson police were contacted, and when they arrived, defendant was advised of his Miranda rights and was questioned on the battery charge, whereupon he told the officer a story similar to that which he had told David. He was then arrested for battery.

Ten days after the incident, Anderson police found Debra's body at the refuse disposal company under an overturned dumpster, approximately sixty feet from the truck which defendant would have driven on a route to the Indianapolis incinerator. The charges against defendant were changed from battery to murder.

## DISCUSSION

### I.

Defendant filed a request for speedy trial under Ind.Crim.Rule 4(B). The right to a speedy trial arises from the 6th Amendment to the United States Constitution, and Article I, Section 12 of the Indiana Constitution. When a defendant files a request for speedy trial, the state is obligated to bring him to trial within seventy days of the request. Crim.R. 4(B). If the state fails to bring the defendant to trial within the allotted time frame, the defendant is entitled to discharge, unless the delay is caused by him. *Id.* The trial court denied defendant's motion for discharge for failure to obtain a speedy trial. Defendant argues that any delay beyond the seventy day period should not have been charged to him, and that he is entitled to discharge. The time line of procedural events is as follows:

November 9, 1994 Defendant files a request for speedy trial (seventy day period to end on January 18, 1995)

Court sets trial date for January 3, 1995, as second choice setting

January 3, 1995 Court resets trial date for January 5, 1995, as second choice setting

Prosecutor files petition to recuse and for appointment of special prosecutor

---

1. There is some uncertainty over whether defendant's remark that the situation would be resolved was in reference to a plan to kill his wife or in reference to a belief that she was leaving him.

January 5, 1995 Due to court congestion, trial is reset for January 17, 1995

January 6, 1995 Court-appointed special prosecutor files his consent

January 11, 1995 Special prosecutor files a motion to continue

Defendant objects to any continuance beyond January 18, 1995

January 13, 1995 Court grants special prosecutor's motion to continue

January 17, 1995 Court resets trial for January 18, 1995

January 18, 1995 Defendant files motion to continue

Seventy-day period for speedy trial motion expires

■ Defendant claims that his counsel was forced to request a continuance beyond the seventy day speedy trial period due to counsel's reliance on the court's decision on January 13, 1995, to continue the trial date and that the court was thus in error to deny his motion for discharge. We disagree. We have already resolved this situation, under almost identical circumstances, in *Carter v. State*, 686 N.E.2d 834, 838–39 (Ind.1997). As in *Carter*, the delay is properly charged to defendant and he is not entitled to discharge.[2]

## II.

■ Defendant next contends that the trial court erred when it excluded statements made by the victim as hearsay. " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ind.Evidence Rule 801(c). Hearsay is inadmissible unless it meets one of the exceptions found in Indiana Rules of Evidence. Evid.Rule 802. When a statement has been excluded from evidence which was not, in actuality, hearsay, this Court will review the trial court's decision under a harmless error analysis. Ind.Trial Rule 61; *See also Smith v. State*, 490 N.E.2d 300 (Ind.1986); *Isaacs v. State*, 659 N.E.2d 1036 (Ind.1995). "An error will be found harmless if its probable impact on the jury, in light of all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties." *Fleener v. State*, 656 N.E.2d 1140, 1142 (Ind.1995).

■ Defendant is correct in his assertion that the statements which the trial court excluded as hearsay were not, in fact, hearsay statements. The court sustained a hearsay objection when defendant attempted to testify as to statements made by Debra Sylvester to defendant during conversations which occurred a few weeks before the murder. The conversations concerned defendant's belief that his wife was having an affair and was going to leave him. Debra denied the affair. The State argues that the victim's statements were hearsay and did not fit into any exceptions to the hearsay rule. Thus, the key issue, before examining any exceptions to the hearsay rule, is whether the evidence is, in fact, hearsay. Here, it plainly is not. Defendant wanted to introduce the statements in order to show the circumstances which led to his "sudden heat." Thus, the statements were not being offered to show the truth of the assertions contained therein, and were not hearsay. Defendant was not trying to prove the truth of Debra's remarks but rather was attempting to show the effects of those remarks on his own behavior. Statements made by a victim which are offered to show the reasons why a person acted in the way he or she did are not hearsay. *See Allen v. State*, 686 N.E.2d 760 (Ind.1997; *Isaacs*, 659 N.E.2d 1036.[3] Since

---

2. Defendant also raises concern that the scheduling of trial for January 18th may have been occasioned by ex parte communication between the court and the special prosecutor. Even if such communication occurred, it would merely be administrative and would thus fall under the exception to Ind.Judicial Conduct Canon 3(B)(8). *See also Mahrdt v. State*, 629 N.E.2d 244 (Ind.Ct. App.1994). Such communication raises no inference of impropriety and was not improper in this case.

3. The State attempted to distinguish our holding in *Isaacs v. State*, 659 N.E.2d 1036 (Ind.1996), by pointing out that the statements made by the victim in *Isaacs* were made as a part of the incident which resulted in her death, whereas the statements in question in this case were made a few weeks prior to the homicide. This distinction, however, is irrelevant to determining whether the statements are hearsay. The focus in a hearsay analysis is neither on who made the statement, nor on when the statement was made.

they were not hearsay, the only remaining inquiry is whether the statements were relevant. Defendant was attempting to support a claim of sudden heat and was seeking to establish the circumstances which lead to his state of mind. He was allowed to testify as to what he said during those conversations, but not as to what Debra said. The excluded statements were relevant in establishing a basis for defendant's own statements and behavior and should not have been excluded. As we have held in the past, the victim's half of a conversation with defendant is relevant as it places defendant's statements in context. *Cunningham v. State,* 256 Ind. 135, 267 N.E.2d 181 (1971); *McFarland v. State,* 263 Ind. 657, 336 N.E.2d 824, 828 (1975). Defendant should have been allowed to testify as to the entire conversation, not just his half of the conversation.

 Where the wrongfully excluded testimony is merely cumulative of other evidence presented, its exclusion is harmless error. *Lopez v. State,* 527 N.E.2d 1119, 1124 (Ind.1988); *Smith v. State,* 490 N.E.2d 300 (Ind.1986). Here, the statements excluded as hearsay would have been cumulative. The jury heard testimony from co-workers that defendant was upset over his belief that his wife was having an affair and may leave him. Further, defendant testified that the victim had been talking to a man on the phone late at night a few weeks before the murder and that it made him upset. Finally, the majority of the conversation between the victim and defendant during the fight which ended in the victim's death was allowed to come in.[4] Thus, the jury had a clear picture of what occurred, even if they did not hear a verbatim retelling of the conversations which oc-

curred during the weeks prior to the murder. However, in light of the overwhelming evidence which tended to show contemplation and premeditation, the jury did not accept the claim of sudden heat. Because we are convinced that exclusion of the evidence did not substantially affect defendant's rights in that its inclusion would likely have had little effect on the jury's decision, we find harmless error.

### III.

 Defendant also alleges that the court erred by failing to declare a mistrial or offer an admonishment to the jury when the prosecutor referred to defendant's post-Miranda silence. When arrested, a criminal defendant has the right to remain silent and must be advised of that right. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). If a defendant, after receiving the Miranda warning, chooses to exercise that right, "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." *Doyle v. Ohio,* 426 U.S. 610, 618, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). Indiana recognizes the rule set forth in *Doyle,* and does not allow prosecutors to use a defendant's post-Miranda silence as a means of impeachment. *Jones v. State,* 265 Ind. 447, 355 N.E.2d 402 (1976).

 While defendant is guaranteed the right not to have his silence used against him, we find no *Doyle* violation here since he did not exercise his Miranda right. Quite simply, defendant did not remain silent.[5] As

---

Rather, the key is whether the statement is being offered to prove the truth of the matter asserted therein.

4. During defendant's direct testimony, he testified as to the events leading up to the victim's death. The prosecutor objected repeatedly whenever defendant mentioned that "she said ...". Finally, when defendant was discussing the fight at the time of the murder, the prosecutor stated, "Judge, I don't even care, I'll let it in." (R. at 937). After that point, defendant testified as to the victim's statements on that day.

5. During his direct testimony and during the cross-examination, defendant stated that he loved

his wife and that he was confused immediately following the murder. The prosecutor then stated: "And you let her body lay there for ten days until the police find it, don't ya? You don't have the humanity for your child's mother, the lady that you're telling this jury that you love, to let her family or the police know where she is, do ya?" (R. at 954). Defendant contends that this line of questioning was a *Doyle* violation. The state argues that this was not a reference to defendant's post-Miranda silence but rather to the statement made by defendant to the police that he did not know where his wife was. That defendant did not tell the police where his wife's body was does not mean that he remained silent

we have recently observed, if a defendant does not remain silent, he cannot later claim that the silence was used against him. *Allen v. State,* 686 N.E.2d 760 (Ind.1997). Here, defendant fabricated a story which he voluntarily told the police during his custodial interrogation. He told the police that he had hit his wife, that she had fled the house on foot and that he did not know where she was. Where a defendant chooses to fabricate a story, he has not remained silent and cannot claim a *Doyle* violation. *See Newhart v. State,* 669 N.E.2d 953 (Ind.1996).

### IV.

■ Defendant claims error in that the trial judge refused to include in the final instructions Defendant's tendered instruction regarding the level of sudden heat necessary to reduce murder to manslaughter. In analyzing jury instructions, we note that the instructions are to be considered as a whole and with reference to each other. *Bonham v. State,* 644 N.E.2d 1223, 1227 (Ind.1994) (citing *Reinbold v. State,* 555 N.E.2d 463 (Ind.1990)). The instructions must be a complete, accurate statement of the law which will not confuse or mislead the jury. *Reaves v. State,* 586 N.E.2d 847, 855 (Ind.1992). In determining whether the trial court judge erred in refusing defendant's tendered instruction, we look to whether: (1) the tendered instruction correctly states the law; (2) there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions which were given. *Reinbold v. State,* 555 N.E.2d 463, 466 (Ind.1990), *overruled in part on other grounds by Wright v. State,* 658 N.E.2d 563, 570. For purposes of this case, it is the third analysis which will be determinative.[6]

■ The trial court correctly rejected defendant's sudden heat instruction, finding that the substance of the instruction was contained in other instructions.[7] Defendant argues that the instructions given leave out the fact that sudden heat is what is needed to reduce murder to manslaughter. However, the instructions given do contain that element. After instructing the jury on the elements required for the state to prove murder, the judge instructed the jury on the lesser included offense of voluntary manslaughter. The instructions which the jury received included the following:

> The crime of voluntary manslaughter [is] defined by statute as follows: a person who knowingly kills another human being while acting under sudden heat, commits voluntary manslaughter, a class B felony, however, it is a class A felony if it is committed by means of a deadly weapon. The existence of sudden heat is a mitigating fact but *it reduces what would otherwise be murder to voluntary manslaughter.* To convict the defendant of voluntary manslaughter, the State must've proved each of the following elements. The defendant, Gary Sylvester, 1) knowingly; 2) killed; 3) Debra Sylvester; 4) while acting under sudden heat.... The term "sudden heat" means an excited mind. It is a condition that may be created by strong emotions such as anger, rage, sudden resentment or jealousy. It may be strong enough to obscure the reason of an ordinary person and prevent deliberation and [sic] meditation. It can render a person incapable of rational thought. When evidence of sudden heat is introduced, the burden is on the State to negate such evidence beyond a reasonable doubt before the defendant may be convicted of murder. Mere evidence of anger is insufficient sudden heat.

---

in the *Doyle* sense. *See Newhart v. State,* 669 N.E.2d 953 (1996).

6. The trial judge noted that the tendered instruction was a correct, though incomplete, statement of the law, thus making the first step in the *Reinbold* analysis unnecessary for our purpose today. Further, whether the evidence supports the giving of the instruction is also not at issue, since instructions on sudden heat were, in fact, given.

7. Defendant tendered the following instruction:

> All that is required to reduce a homicide from murder to voluntary manslaughter is sudden heat. The sudden heat need not be so severe as to render the defendant incapable of logical thought, and may result from provocation without opportunity for due deliberation or for passion to subside.

(R. at 190).

(R. at 997–99) (emphasis added). The instructions given fully and accurately express the law with respect to sudden heat. *See Clark v. State*, 668 N.E.2d 1206, 1209 (Ind. 1996). Where the tendered instruction is correctly contained within other instructions, it is not error to reject the tendered instruction. *McCurry v. State*, 558 N.E.2d 817, 819 (Ind.1990). Thus, it was not error for the trial court to deny defendant's tendered instruction.

## V.

■ Finally, defendant contends that the aggravating factor cited by the trial court was insufficiently supported by the record to justify enhancement of the sentence. At the sentencing hearing, the court found no mitigating factors but found as an aggravating factor that the crime was premeditated and preconceived. Planning of the crime may be appropriately weighed as an aggravator. *Bustamante v. State*, 557 N.E.2d 1313 (Ind. 1990). The judge cited ample evidence presented at trial to support the finding of premeditation and plan: defendant had made statements to co-workers regarding what he would do if he found that his wife had been cheating on him; defendant had commented on how he could dispose of a body; and defendant appeared to have done precisely what he had predicted, as the body was found at the disposal company site near defendant's work truck, which defendant would have driven on a route to the incinerator the very morning after the murder. We find the court's statement to be sufficient to support the finding of an aggravating circumstance.

With respect to any mitigators, defendant first contends that he showed remorse. We have noted in the past that "[w]hen a defendant argues mitigating circumstances to the trial court, the sentencing judge is not obligated to explain why he has chosen not to make a finding of mitigation. Moreover, the trial court is not obligated to credit or weigh the defendant's evidence of mitigating circumstances the same way the defendant does." *Hammons v. State*, 493 N.E.2d 1250, 1254–1255 (Ind.1986) (citations omitted).

■ Defendant also argues that the evidence of sudden heat, while insufficient to sway the jury, should have been given some weight as a mitigator. Defendant cites no authority for the proposition, and we find it to be unpersuasive. Sudden heat is a mitigator only in the sense that it can be used to "mitigate" what would otherwise be murder to a conviction on manslaughter. See IND. CODE § 35–42–1–3 (1993); *Taylor v. State*, 681 N.E.2d 1105 (Ind.1997). The jury was not persuaded that sudden heat existed for the guilt phase and the sentencing judge was not required to find that sudden heat was a mitigating factor in the sentencing determination. The record otherwise supports the findings of the sentencing judge as to both aggravators and mitigators and we find no error.

### CONCLUSION

We affirm the conviction and the sentence.

SHEPARD, C.J., and DICKSON and BOEHM, JJ., concur.

SULLIVAN, J., concurs in result and concurs in the opinion except as to footnote 2.