**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**DONALD C. SWANSON, JR.,**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN MCLEAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RICHARD J. CHARLTON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A03-1108-CR-397 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Frances C. Gull, Judge
Cause No. 02D04-1008-FB-135

**March 8, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Richard Charlton appeals his conviction for Class B felony rape. We affirm.

**Issues**

Charlton raises two issues, which we restate as:

    I.      whether the trial court abused its discretion by limiting evidence of the sexual history between Charlton and the victim; and

    II.     whether the evidence is sufficient to sustain his conviction.

**Facts**

Charlton and R.F. had been involved in a sexual relationship that produced a child. On March 21, 2010, Charlton asked R.F. to bring their daughter to his house in Fort Wayne. R.F. took their one-year-old daughter and her other infant to Charlton's home. When she arrived Charlton was playing video games with his cousin, Cedric. Charlton went into his bedroom and asked R.F. to come with him. Charlton shut and locked the bedroom door, leaving their one-year old child outside the door. Charlton then pushed R.F. face down on the bed and held her down by the back of her neck. Charlton unfastened R.F.'s pants and ignored her requests for him to stop. Charlton then had sexual intercourse with R.F. Charlton said, "just let me feel it for a little bit longer." Tr. p. 49. R.F. was having her menstrual period and was wearing a tampon. Charlton did not remove the tampon, and the tampon was "jammed up inside" of R.F. as a result of the sexual intercourse. Id. at 50. When Charlton was finished, R.F. readjusted her clothing, collected her children, and left.

R.F. called a friend and her mother and went to the police station. Her mother noticed that R.F. was crying, upset, and could barely walk. R.F. was sent to the Sexual Assault Treatment Center, where she was examined by Sharon Robison, a sexual assault nurse. Robison noticed that R.F. was crying and in pain. R.F. had several genital tears, including on her inner labia minora and posterior fourchette. Robison also had to use forceps to remove the tampon, which was "embedded underneath the cervical ausc." Id. at 124. Robinson collected evidence with a sexual assault evidence collection kit, which revealed the presence of seminal material. DNA analysis of the seminal material matched Charlton's DNA profile.

The State charged Charlton with Class B felony rape. The State filed a motion in limine regarding past sexual conduct between Charlton and K.F. pursuant to Indiana Evidence Rule 412. Charlton did not object, and the trial court granted the State's motion. At the jury trial, Charlton questioned K.F. regarding whether sex was a "big part" of her relationship with Charlton, and she responded that it was. Id. at 59. The trial court then sustained the State's objections to Charlton asking K.F. whether they had sex in various places and whether his sexual approaches to her in the past had been different than the occasion at issue. The trial court refused to allow juror questions regarding whether Charlton and K.F. had sexual intercourse following the alleged rape because it concluded the questions would have violated the motion in limine.

Charlton testified in his defense regarding their prior sexual relationship. He testified that the sexual intercourse on March 21, 2010, was consensual and that R.F. was not in pain during or after the sexual intercourse. According to Charlton, the March 21,

3

2010 sexual intercourse was not unusual in terms of their sexual relationship. Charlton also testified that he had talked to and seen R.F. after the March 21, 2010 incident and that he was not "intimate" with R.F. at any of those visits. Id. at 196. During his closing, Charlton argued that the sexual intercourse was consensual.

The jury found Charlton guilty as charged, and the trial court sentenced him to ten years in the Department of Correction. Charlton now appeals.

**Analysis**

*I. Admission of Evidence*

Charlton argues that the trial court abused its discretion by excluding evidence of the parties' sexual history. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. Timberlake v. State, 690 N.E.2d 243, 255 (Ind. 1997), cert. denied. An abuse of discretion occurs if a trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. Joyner v. State, 678 N.E.2d 386, 390 (Ind. 1997). However, if a trial court abuses its discretion by excluding evidence, we will reverse only if that error affects "the substantial rights of the parties." Ind. Trial Rule 61. "Where the wrongfully excluded testimony is merely cumulative of other evidence presented, its exclusion is harmless error." Sylvester v. State, 698 N.E.2d 1126, 1130 (Ind. 1998).

During cross examination, the trial court sustained the State's objections to Charlton asking K.F. whether they had sex in various places and whether his sexual approaches to her in the past had been different. The trial court also refused to allow

4

juror questions regarding whether Charlton and K.F. had sexual intercourse following the alleged rape because it concluded the questions would have violated the motion in limine.

Charlton argues that the trial court abused its discretion by excluding this evidence. The State argues that Charlton waived any error by failing to object to the motion in limine, by failing to file a notice pursuant to Indiana Evidence Rule 412(b), and by failing to make an offer of proof. We need not address Charlton or the State's arguments because we conclude that any alleged error is harmless.

During cross examination, Charlton questioned K.F. regarding whether sex was a "big part" of her relationship with Charlton, and she responded that it was. Tr. p. 59. Charlton later testified in his defense regarding their sexual relationship. According to Charlton, the March 21, 2010 sexual intercourse was not unusual in terms of their sexual relationship. Charlton also testified that he had talked to and seen R.F. after the March 21, 2010 incident and that he was not "intimate" with R.F. at any of those visits. Id. at 196. The excluded evidence was merely cumulative of other evidence admitted at the trial. As for the locations of sexual intercourse between Charlton and R.F., Charlton has failed to demonstrate how this excluded evidence was relevant or affected his substantial rights.

## II. Sufficiency of the Evidence

Charlton argues that the evidence is insufficient to sustain his conviction for rape. When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. Bailey v. State, 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and

5

any reasonable inferences that can be drawn from such evidence." Id. We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. Id.

The State was required to prove beyond a reasonable doubt that Charlton knowingly or intentionally had sexual intercourse with R.F. when she was compelled by force or imminent threat of force. Ind. Code § 35-42-4-1(a)(1). Charlton argues that the evidence is insufficient because his sexual intercourse with R.F. on March 21, 2010 was not unusual, that R.F. was fine when she left his house, that his cousin indicated R.F. was not angry or upset when she left, that R.F. did not oppose the sexual intercourse, and that R.F. continued to have contact with him after the incident. Charlton's argument is merely a request that we reweigh the evidence and judge the credibility of the witnesses, which we cannot do.

The State presented evidence that Charlton invited R.F. into his bedroom, pushed her face down on the bed, held her down by the back of her neck, and had sexual intercourse with her despite her pleas for him to stop. During the sexual intercourse, R.F.'s tampon was "jammed up inside" of her. Tr. p. 50. R.F. immediately called a friend and her mother and went to the police station. Her mother noticed that R.F. was crying, upset, and could barely walk. Robinson, a sexual assault nurse, examined R.F. and noticed that she was crying and in pain. R.F. had several genital tears, and Robison had to use forceps to remove the tampon, which was "embedded underneath the cervical ausc." Id. at 124. This evidence is sufficient to sustain Charlton's conviction for Class B felony rape.

6

**Conclusion**

Any error in the exclusion of evidence regarding the sexual history of the parties was harmless. The evidence is sufficient to sustain Charlton's conviction for rape. We affirm.

Affirmed.

KIRSCH, J., and BRADFORD, J., concur.