John M. HIRSCH, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 48S02–9806–CR–374.

Supreme Court of Indiana.

June 30, 1998.

Thomas L. Hulse, Anderson, for Appellant.

Jeffrey A. Modisett, Attorney General, Randi F. Elfenbaum, Deputy Attorney General, Indianapolis, for Appellee.

## ON PETITION TO TRANSFER

BOEHM, Justice.

John M. Hirsch was convicted of involuntary manslaughter and sentenced to eight years imprisonment. His defense at trial was self-defense. When Hirsch took the stand, the trial court barred him from giving a complete account of the altercation that led to the victim's death. We grant transfer to address the scope of a defendant's right under the Indiana Rules of Evidence to testify to facts or circumstances that are relevant to assessing a self-defense claim. Because we conclude that the trial court wrongly excluded testimony by Hirsch and the error was not harmless, we reverse and remand for a new trial or other proceedings consistent with this opinion.

### Factual and Procedural History

On May 9, 1995, Hirsch and the victim, Willie Redfield, got into a fight in a common

area at the Madison County Jail where they were both inmates. Redfield was rendered unconscious and died three weeks later. The cause of death was determined to be strangulation. The testimony of several witnesses as to what occurred is discussed in detail because the State argues that the disputed testimony that was excluded—Hirsch's account of Redfield's refusal to quit fighting— was cumulative. Evaluating Hirsch's claim of prejudice requires a full understanding of what went on at trial. All witnesses discussed except Hirsch were called by the State. They are described in the same sequence as they testified at trial.

*Detective Robert Blount*

Detective Robert Blount of the Madison County Police Department did not witness the altercation between Hirsch and Redfield. He testified to what Hirsch told him during an interrogation of Hirsch right after the event. The following is Hirsch's story as told to Blount, and recounted by Blount to the jury.

A card game involving neither Hirsch nor Redfield was in progress in a common area in the jail. Hirsch was sitting at a table in the common area for an undefined period and eventually went to his nearby cell where he soon heard someone say "Willie we was watching that." Hirsch returned to the common area to find that Redfield had changed the channel on the common television. As Redfield and several other inmates looked on, Hirsch changed the channel back to the original station.[1] Hirsch and Redfield exchanged words, Redfield shoved Hirsch a few times, Hirsch shoved him back, and then Redfield hit Hirsch two or three times in the face. Hirsch grabbed Redfield to keep from getting hit further and the men fell to the floor.

Hirsch first told Blount that he pinned Redfield down with his forearm and had his other arm behind Redfield's back. Later in the interrogation Hirsch stated that he had Redfield in a "choke" hold.[2] Once Hirsch got control of Redfield, he said several times to Redfield "Willie quit" or asked Redfield to "be cool." Redfield gave Hirsch a "negative

---

1. In a different version of events, Hirsch also told Blount that he was standing in front of the television when Redfield first changed the channel.

2. Blount testified that based on conversations with other sources shortly after the altercation and before the interrogation of Hirsch, Blount

concluded that Hirsch next said something like "I'll put you to sleep" or "I'll put you out" to Redfield. When Blount confronted Hirsch with this information, Hirsch denied making any such statements. Hirsch reiterated this denial in his trial testimony.

response" and continued to struggle. Blount concluded: "[Hirsch] stated that he kept asking Mr. Redfield to stop and if he would let him go would he stop, Mr. Hirsch stated that Redfield said, no, I'm not going to do that. Mr. Hirsch stated that . . . the stronger that Mr. Redfield got, the harder he squeezed until eventually Mr. Redfield stopped resisting, stopped trying to fight and then he got up." Hirsch sustained abrasions on his face, chest, and upper back that he displayed for Blount during the interrogation. Blount described Hirsch, who claimed that he did not intend to hurt Redfield, as "emotional" and "shaken."

*Earl Lucius*

Inmate Earl Lucius viewed the fight from a balcony overlooking the common area. He testified that he saw Hirsch and Redfield argue, push each other, and then come to blows, with Redfield throwing the first punch. Hirsch got Redfield into a headlock for approximately one to two minutes and said during that time that he would "put [Redfield] to sleep if he wouldn't stop fighting." On cross-examination, Lucius testified that Hirsch said "quit" to Redfield "several" times and that Redfield nonetheless continued to fight. When defense counsel asked Lucius what Redfield said in response to Hirsch's statements, the State objected and argued in sum that anything Redfield said was inadmissible hearsay. In an offer to prove, the defense maintained that Lucius's testimony—that Redfield said he would not stop fighting—was admissible under hearsay exceptions for "present sense impression" or "excited utterance." The trial court sustained the State's objection. Accordingly, Lucius was not permitted to testify to anything Redfield said to Hirsch in response to Hirsch's apparent offer to end the hostilities.

*Willie Whaley*

One of the card game participants, inmate Willie Whaley, testified that after Redfield changed the channel, Hirsch came out of his cell and changed it back. At some point Redfield pushed Hirsch's hand away from the television. Hirsch then said "don't touch me" and the struggle ensued.[3] According to Whaley, after Hirsch got control of Redfield on the floor, Hirsch said "you gonna quit it?" and Redfield replied "hell no." In response to this testimony, the State impeached Whaley with a statement he gave to authorities on the day of the altercation. In the statement, Whaley had said that he "couldn't understand [Redfield] because he was being choked or something."[4]

*John Hirsch*

Defendant Hirsch testified that after Redfield changed the channel on the television, Hirsch turned it back to the original station. Redfield changed the channel again. When Hirsch reached for the television a second time, Redfield pushed his hand away and Hirsch said "don't touch me." Redfield then pushed Hirsch with both hands. Hirsch pushed Redfield back. Redfield punched Hirsch in the face, Hirsch threw a punch that missed, and Redfield punched Hirsch again. Hirsch grabbed Redfield and the men fell to the floor. At some point Hirsch tried without success to get the attention of a guard. Hirsch pinned Redfield on the floor and told him several times to "quit" or "stop." When defense counsel asked Hirsch what Redfield said in response, the State objected and the trial court sustained the objection, presumably on the same hearsay grounds asserted as to Lucius. Hirsch testified that he did not let Redfield up because "[i]f I would have let him up, he would have continue[d] to fight. And when I ask[ed] him to quit, quit, he wouldn't quit, he said, no." The State immediately objected to this testimony, calling it a "hearsay answer," and asked that it be stricken. The trial court sustained the State's objection and admonished the jury to disregard the statement.

By the time of cross-examination, Hirsch appears to have understood the ground rules that had been established barring the admission of anything Redfield said in response to Hirsch's apparent offer to "quit." Hirsch testified without greater specificity on cross-examination that while on the ground Redfield was "speaking back towards me" and

---

3. On direct examination, Whaley testified that he was uncertain who threw the first punch, but he stated on cross-examination that Redfield both pushed and punched Hirsch first.

4. Whaley's pretrial statement was also admitted to impeach Whaley's assertion at trial that he was uncertain whether Hirsch had told Redfield that he would put Redfield "to sleep." In the statement, Whaley said that Hirsch had told Redfield "you're going to sleep."

"talkin' back." Hirsch denied that he intended to kill or even injure Redfield and maintained that he feared for his safety because Redfield was "bigger and stronger" than he was.[5] Hirsch asserted that he applied no more force than was necessary under the circumstances and that he was merely defending himself. After Redfield stopped struggling, Hirsch retrieved a glass of water and poured it on Redfield's face in an effort to revive him. Finally, Hirsch testified that he did not have Redfield in a "choke" hold, but rather was holding Redfield down with one arm across Redfield's chest.[6]

Hirsch was initially charged with aggravated battery. After Redfield died, the information was amended to allege murder. A jury convicted Hirsch of involuntary manslaughter, he appealed, and the Court of Appeals affirmed. *Hirsch v. State*, 683 N.E.2d 647 (Ind.Ct.App.1997) (unpublished table decision).

### I. Admissibility of Hirsch's Testimony

▮ Hirsch argues that the trial court erred in barring him from testifying to Redfield's refusal to stop fighting. The claim is that Hirsch's testimony was admissible under the Indiana Rules of Evidence and highly probative as to self-defense because it illustrated: (1) the reasonableness of Hirsch's fear of further attack and need to defend himself; and (2) that Redfield responded to Hirsch's offer to withdraw by threatening to continue.[7] Although rulings admitting or ex-

cluding evidence are typically reviewed for an abuse of discretion, the ruling at issue here is reviewed de novo because it turns on a misunderstanding of a rule of evidence, specifically the hearsay rule. *Stahl v. State*, 686 N.E.2d 89, 91 (Ind.1997).

▮ The elements of self-defense are defined by statute:

> A person is justified in using reasonable force against another person to protect himself or a third person from what he reasonably believes to be the imminent use of unlawful force. However, a person is justified in using deadly force only if he reasonably believes that that force is necessary to prevent serious bodily injury to himself. . . .

IND.CODE § 35–41–3–2(a) (1993). Force is not justified if the defendant enters into combat with another person or is the initial aggressor, unless the defendant communicates an intent to withdraw and the other person "nevertheless continues or threatens to continue unlawful action." § (d)(3). If self-defense is supported by the evidence, the State must disprove at least one element of the defense beyond a reasonable doubt. *Birdsong v. State*, 685 N.E.2d 42, 45 (Ind. 1997); *Jordan v. State*, 656 N.E.2d 816, 817 (Ind.1995).

▮ When a claim of self-defense is interposed, "[a]ny fact which reasonably would place a person in fear or apprehension of death or great bodily injury is admissible." *Russell v. State*, 577 N.E.2d 567, 568 (Ind. 1991). Here the statement (Redfield's refus-

---

5. *Inmates Lucius and Whaley both testified that Redfield was "taller" and "heavier" than Hirsch.*

6. On rebuttal, Detective Blount testified that Hirsch demonstrated a "headlock" grip during the post-fight interrogation to illustrate how Hirsch had held Redfield down.

7. Hirsch also maintains that the restrictions on his testimony violated Article I, Section 13 of the Indiana Constitution. Because this argument is raised for the first time in Hirsch's reply brief, it is waived. *See, e.g., Gray v. State*, 593 N.E.2d 1188, 1191 (Ind.1992). We note, however, that the right of the accused to testify is ultimately of constitutional dimension. The Indiana Constitution "places a unique value upon the desire of an individual accused of a crime to speak out personally in the courtroom and state what in his mind constitutes a predicate for his innocence of the charges." *Campbell v. State*, 622 N.E.2d

495, 498 (Ind.1993) (holding that statute barring presentation of an alibi defense violated Article I, Section 13). The United States Supreme Court has described the defendant's federal constitutional right "to present his own version of events in his words" as "fundamental." *Rock v. Arkansas*, 483 U.S. 44, 52, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). *See also United States v. Scheffer*, 523 U.S. ——, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998) (reaffirming that the defendant enjoys some degree of federal constitutional right to present a defense). Today's holding is consistent with these holdings under the state and federal constitutions. We do not decide whether it is demanded by them; it is enough to dispose of this case that the trial court erroneously excluded admissible and highly relevant testimony and the error was not harmless as a matter of state law. *See Fleener v. State*, 656 N.E.2d 1140, 1141–42 (Ind.1995) (distinguishing harmlessness for federal constitutional purposes from state harmless error rules).

al to stop fighting) was relevant irrespective of the truth of the matter asserted (that Redfield would not stop). Otherwise stated, the fact that Redfield said it is itself a relevant fact. As such, the statement is not hearsay at all and requires no exception to the hearsay rule. This general proposition has been specifically applied in self-defense cases to admit reports of statements that generate fear or concern when that is in issue. *Isaacs v. State*, 659 N.E.2d 1036, 1038–39 (Ind.1995) (victim's responses were "as pertinent" to self-defense claim as defendant's statements to victim); *Shepard v. State*, 451 N.E.2d 1118, 1121 (Ind.Ct.App. 1983); *Nuss v. State*, 164 Ind.App. 396, 406–07, 328 N.E.2d 747, 754 (1975).

We agree with Hirsch that his account of Redfield's refusal to stop fighting was highly relevant and easily passes the liberal relevancy standard of Evidence Rule 401. First, whether it was true or not as a report of what Redfield intended to do, the refusal certainly could have reasonably led Hirsch to believe that Redfield intended to continue fighting. Hirsch's holding Redfield down until he agreed to stop fighting could have been viewed as reasonable because Redfield, according to inmates Lucius and Whaley, was "taller" and "heavier" than Hirsch. Second, although the evidence as a whole does not suggest that Hirsch initiated the confrontation, Redfield's refusal was all the more important if the jury concluded that Hirsch either "entered into combat" with Redfield or was the initial aggressor. If credited, Hirsch's testimony proved that Redfield responded to an offer to withdraw by "threaten[ing] to continue unlawful action." IND. CODE § 35–41–3–2(d)(3) (1993). This in turn justified Hirsch's continuing use of force irrespective of how the altercation began. *Id.*

The same analysis governs the application of the hearsay rule to testimony by other witnesses relaying Redfield's statements. Redfield's responses to Hirsch's apparent requests for an armistice were relevant irrespective of the truth of their contents. Accordingly, they are not hearsay. In sum, the trial court erred in barring Hirsch's testimony because it was highly relevant to assessing his claim of self-defense and was not inadmissible on hearsay grounds.

## II. Harmless Error

The State contends that any error did not prejudice Hirsch because the excluded testimony was cumulative of Detective Blount's and Whaley's testimony on the same point. Hirsch replies that his testimony was not cumulative because it was "critical" to his self-defense claim and also corroborated Blount.

 Whaley's testimony provides no basis for holding the error to be harmless. Indeed, the State's suggestion in this appeal that Whaley's testimony rendered harmless the exclusion of Hirsch's account is wholly inconsistent with the State's successful effort to introduce a prior inconsistent statement from Whaley on this point.[8] Blount also provides no basis to exclude Hirsch's account. Although Blount's testimony was substantively similar to what Hirsch would have said, it differed in two important respects. First, Blount did not witness the fight. As a third party merely relaying what Hirsch told him after the event, Blount's account was qualitatively different from that of an eyewitness or one of the participants. It turns the hearsay rule on its head to claim, as the State does, that admission of Blount's hearsay account[9] renders cumulative the testimony of the eyewitness declarant (Hirsch). Second, even if Hirsch's testimony were technically substantively cumulative of Blount's, we cannot conclude that Hirsch was not prejudiced by exclusion of his own firsthand account. The ultimate issue is the reasonableness of Hirsch's claimed belief that he was in danger until Redfield agreed to stop. Nothing can be more central to this issue than Hirsch's own account of these events. The testimony of other witnesses, either by hearsay or firsthand, to the same fact does not

---

8. As discussed in Part III *infra*, the jury was instructed that prior inconsistent statements could be considered for substantive proof of guilt. As Hirsch observes, this further undermines the State's claim that, because of Whaley's testimony, Hirsch was not prejudiced.

9. Blount's account of Hirsch's statement that Redfield said he would not quit is not hearsay only because Hirsch was a party. Ind.Evidence Rule 801(d)(2)(A). If Blount reported anyone else's account of Redfield's statement, it would be hearsay because offered to prove the truth of the fact that Redfield said it whether or not Redfield was truthful.

render the error harmless. If Hirsch was not a credible witness, it is difficult to imagine how his defense could have prevailed, irrespective of anything other witnesses might have said. And only Hirsch could testify to his feelings, intent, and perceptions, and his actual belief that he was in imminent harm. Ind.Evidence Rule 701; *Weaver v. State*, 643 N.E.2d 342, 345 (Ind.1994); *Johnson v. State*, 584 N.E.2d 1092, 1104 (Ind. 1992). Any testimony by Hirsch to circumstances bearing on his state of mind was thus of unique value.[10]

Although we find no factually apposite case, the failure to permit the defendant to present all evidence relevant to a self-defense claim has resulted in reversal on non-constitutional grounds in several decisions. For example, in *Nuss v. State*, 164 Ind.App. 396, 328 N.E.2d 747 (1975) the trial court barred the defendant from questioning a witness about the victim's threats to harm the defendant. As in today's case, the trial court erroneously excluded the testimony on the ground that it was inadmissible hearsay. *Nuss* held that even if the witness's testimony "might have been" cumulative of the defendant's, it was reversible error to exclude the evidence because it was "extremely critical" to evaluating the self-defense claim: "In view of the fact that [the defendant's] credibility was of utmost importance to his defense, the wrongful exclusion of any evidence which would tend to corroborate his testimony or lend credence to his defense would not

be without prejudice to his substantial rights." *Id.* at 407–08, 328 N.E.2d at 754–55. If the wrongful exclusion of testimony of a third party that is possibly cumulative but corroborates the defendant is grounds for reversal, the obverse situation—the exclusion of testimony by the defendant that would have corroborated a third party—is an *a fortiori* case.[11]

 Another factor in the prejudice calculus is that the State did not concede the substance of the excluded testimony. In closing arguments, the State questioned Hirsch's contention that Redfield's throat injuries may have occurred when the men fell to the floor and not when Hirsch held Redfield down:

> [I]f that injury occurred [due to the fall], then how could [Redfield] have spoken all these words that the defendant says that he spoke. And I objected to those words being related to you. But [Hirsch] did testify that words were being spoke. It is interesting that Willie Whaley in his statement to the State Police said, yeah, Redfield was speaking words or trying to respond, but he couldn't because he was being choked. Now [Whaley] changed that. He decided to change that before he testified to you, too.

By reminding the jury of the contents of Whaley's prior inconsistent statement, the State took issue with whether Redfield said anything at all, much less the substance of any remarks. This was not improper argu-

---

**10.** Our decisions have long emphasized the central importance of the defendant's testimony in a self-defense case: "The question of the existence of such danger, the necessity or apparent necessity, as well as the amount of force necessary to employ to resist the attack can only be determined from the standpoint of the defendant at the time and under all the then existing circumstances." *French v. State*, 273 Ind. 251, 254, 403 N.E.2d 821, 824 (1980) (quoting *Martin v. State*, 260 Ind. 490, 296 N.E.2d 793 (1973)). Focusing on the "standpoint of the defendant" means at least two things: (1) the trier of fact must consider the circumstances as they appeared to the defendant, rather than to the victim or anyone else; and (2) the defendant's own account, although not required to be believed, is critically relevant testimony. As one early case put it:

> [W]hoever relies upon appearances, and a reasonable determination upon such appearances, as a defence in a case of homicide, ought to be allowed to prove every fact and circumstance *known to him*, and connected with the deceased, which was fairly calculated to create

an apprehension for his own safety. Any narrower rule than this would, we think, prove inadequate to full justice in all cases of homicide, and would, in many cases, operate as a serious abridgement of the law of self-defence.

*Boyle v. State*, 97 Ind. 322, 326 (1884) (emphasis added). Indeed, barring even a part of the defendant's account (assuming the evidence is admissible) effectively undermines the right to act in self-defense: "A defendant is denied the right to exercise reasonable force in response to an unwarranted attack when he is not permitted to present evidence relevant to the claim of self-defense." *Gunn v. State*, 174 Ind.App. 26, 33, 365 N.E.2d 1234, 1240 (1977).

**11.** *See also Russell v. State*, 577 N.E.2d 567 (Ind. 1991) (conviction reversed because trial court barred defendant from testifying to victim's statement that victim had just been released from prison); *Enlow v. State*, 154 Ind. 664, 57 N.E. 539 (1900) (new trial was required because defendant was not permitted to present evidence of victim's prior assault on and threats to kill defendant).

ment; parties are generally free in closing statements to challenge the credibility of witnesses by pointing to inconsistencies in the evidence. *See, e.g., Hobson v. State,* 675 N.E.2d 1090, 1096 (Ind.1996). However, having questioned whether Redfield said anything to Hirsch, the State cannot shift gears on appeal and maintain that the wrongly excluded testimony is simply cumulative of uncontradicted and unchallenged evidence already presented. *Cf. Wilson v. State,* 465 N.E.2d 717, 720 (Ind.1984) (no error in exclusion of gray jacket because the State conceded that defendant was wearing a gray jacket at the time he was apprehended).

■ Because of the presumption of innocence and the privilege against self-incrimination, the accused has a constitutional right literally to sit mute at trial and make the State prove every element of its case beyond a reasonable doubt. *See, e.g., In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). However, if the defendant wants to assert self-defense, "it is uniformly held that the defendant is obliged to start matters off by putting in some evidence in support of his defense." 1 WAYNE R. LaFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 1.8, at 72 (1986); *see also* 2 PAUL H. ROBINSON, CRIMINAL LAW DEFENSES § 132, at 99 (1984) ("The burden of production for the defense of self-defense is always on the defendant.") (footnote omitted). Although placing the burden of production on the accused as to affirmative defenses usually encounters no constitutional shoal, *Simopoulos v. Virginia,* 462 U.S. 506, 510, 103 S.Ct. 2532, 76 L.Ed.2d 755 (1983), fundamental fairness dictates that any party shouldering the burden of coming forward with evidence—particularly the ac-

cused in a criminal case—be given a relatively untrammeled opportunity to do so. Hirsch was denied that opportunity here.

■ This is not to say that, depending on the facts, particular evidence bearing on a self-defense claim can never be cumulative. *Cf. Hoskins v. State,* 268 Ind. 290, 292–93, 375 N.E.2d 191, 192–93 (1978) (conviction affirmed because erroneously barred evidence was cumulative). At least where the defendant's testimony to a critical factual element is wrongly excluded, the error is not harmless.[12] Were the law otherwise, nothing would prevent the State from putting the most important pieces of the defendant's story into evidence before the defendant takes the stand and later precluding the defendant from testifying to the same facts.

### III. Jury Instruction on Prior Inconsistent Statements

■ Finally, we take up an issue that may arise in a retrial. Hirsch contends that the trial court erred in giving the following jury instruction:

> Prior inconsistent statements may be considered by you for two purposes. You may use them to impeach the capacity for truthfulness of the witness who made the inconsistent statements. You may also consider the out-of-court statements as evidence in determining the guilt or innocence of the defendant of the crime charged.

Hirsch did not object to this instruction at trial. This ordinarily results in waiver of the issue. Ind.Crim.Rule 8; Ind.Trial Rule 51(C). Hirsch attempts to circumvent his

---

**12.** In this respect, today's case is unlike several prior decisions holding that erroneous exclusion of the testimony of the accused where self-defense was in issue was harmless. In *Isaacs v. State,* 659 N.E.2d 1036 (Ind.1995), the trial court wrongly barred the defendant's account of statements that the victim made to the defendant just before the victim was killed. Any error was found to be harmless because the evidence of guilt was compelling and the statements that were excluded "would have done little to enhance the detailed picture painted by [the defendant's] own description." *Id.* at 1039. The victim's statements in *Isaacs* dealt with collateral factual issues, such as the victim's drinking habits and the amount of child support payments. *Id.* at 1038. Although exclusion of some of the

victim's threats to the defendant in *Smith v. State,* 490 N.E.2d 300 (Ind.1986) was held to be harmless error, that decision is also not on point. We reasoned there that the part of the defendant's account of the victim's threats that was erroneously barred was cumulative of the defendant's testimony as to threats that was allowed. *Id.* at 303. Substantial other evidence also supported the conclusion that the error was not unfairly prejudicial. *Id.* at 302–03. In contrast to *Isaacs* and *Smith,* here the trial court barred Hirsch from testifying to anything Redfield said where Redfield's statements were vital to assessing the reasonableness of Hirsch's conduct. We are directed to no Indiana precedent holding error to be harmless under these circumstances.

**44**

failure to object by asserting that the giving of the instruction amounted to fundamental error. This Court recently rejected a claim of fundamental error with respect to a similar instruction. *Ben–Yisrayl v. State,* 690 N.E.2d 1141, 1150 (Ind.1997), *petition for reh'g filed.* The merits of Hirsch's claim need not be addressed because a new trial is required on other grounds. However, for the reasons explained in *Humphrey v. State,* 680 N.E.2d 836 (Ind.1997), we again emphasize that this instruction "does not reflect current law and should not be used in trials in this state." *Id.* at 840.

### Conclusion

The conviction is reversed. This cause is remanded for a new trial or other proceedings consistent with this opinion.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.