**Jannette ATHERTON, Appellant–Petitioner,**

v.

**STATE of Indiana, Appellee–Respondent.**

No. 30A05–9902–PC–46.

Court of Appeals of Indiana.

June 30, 1999.

Rehearing Denied Aug. 25, 1999.

N. Sean Harshey, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

DARDEN, Judge

### STATEMENT OF THE CASE

Jannette Atherton appeals the denial of her petition for post-conviction relief following her conviction of kidnapping.

We affirm.

### ISSUE

Did the post-conviction court properly deny Atherton's request for relief?

### FACTS

Our supreme court affirmed Atherton's conviction of kidnapping in *Atherton v. State,* 248 Ind. 354, 229 N.E.2d 239 (1967), succinctly setting forth the following facts:

> On or about the 23rd day of August, 1962, the appellant, accompanied by three men, drove into a motel in eastern Marion County. The appellant and one of the men entered the office of the motel and requested a room. They were told by the attendant, one Howard Hopkins, that there were not any rooms available. At that time the appellant's confederate, who had accompanied her into the motel, said in substance, "That makes no difference— this is a stick-up anyway." The confederate placed an object in the back of Hopkins, the manager, while appellant went to the cash register and removed all of the money from it. Thereupon the confederate of the appellant told Hopkins to accompany them. Hopkins was put on the floor of the motor vehicle, blindfolded, driven around for some time, and was finally cast from the automobile, and at that time was kicked in the head by one of appellant's confederates. The kicks resulted in several lacerations on the head of Hopkins.

229 N.E.2d at 241.

The State charged Atherton and confederates Wilbur Davis, George Willis, and Ronnie Murray with robbery and kidnapping. The State later dismissed the robbery charge.

At trial, the State introduced Atherton's statement to the police, in which she stated her confederates came to her house and indicated that they needed a woman. She also stated that Davis suggested that they rob the motel. In her statement, Atherton also indicated as follows:

> There is one thing I wish to say, that Wilbur Davis forced me to go on this robbery by threatening me. He said he was going to call my bondsman and tell him where I was at [ ] and that my kids were with me. I was afraid that they would take my kids before I had a chance to get them taken care of.

(R. 422).

Atherton, Willis, and Murray testified at trial. Davis did not testify. Atherton testified that Davis tricked her into going to the motel by falsely stating that he wanted her to drive with him and the other confederates so that he could borrow money from his brother-in-law. According to Atherton, once inside, Davis forced her to participate in the robbery by holding a knife against her.

Confederate Willis testified that he knew nothing of the robbery plan but that, after a day of drinking alcohol and taking drugs, he woke up in a car parked at the motel, and Atherton and Davis came out of the office. According to Willis, Davis was holding on to both Hopkins and Atherton. Willis further testified that he and Murray cooperated with Davis because Davis threatened them with a knife. Murray's testimony corroborated the testimony of both Atherton and Willis, and he specifically indicated that Davis was controlling Atherton when the two came out of the motel office with Hopkins.

Atherton and Davis were convicted, but Willis and Murray were acquitted. Atherton was sentenced to a mandatory life sentence. On direct appeal, Atherton contended that the verdict was contrary to law and that the evidence was insufficient to support her conviction because there was no evidence that she used force. Our supreme court affirmed her conviction, finding that although there may not have been any evidence that Atherton personally used force, there was concerted action between Atherton and her confederates before, during, and after the kidnapping. *Atherton,* 229 N.E.2d at 241. The court then stated that "for two or more confederates to engage in the commission of an unlawful act, one is liable for the act of the other in furtherance of the unlawful common objective." *Id.* (citations omitted). It further observed that a person engaged in the commission of an unlawful act is criminally liable for probable and natural consequences, including everything done by confederates, which follows, incidentally, in the execution of a common design, even though not intended as a part of the original design. *Id.* The court concluded that Atherton engaged in the commission of an unlawful act with her confederates, and that she was legally responsible for all the consequences which naturally and necessarily flowed from her acts, including kidnapping. *Id.* In closing, the court noted that "there is a complete absence of any evidence in the record of any attempt of the appellant to abandon her confederates on the unlawful venture." *Id.*

Shortly after the supreme court affirmed Atherton's sentence to a term of life of imprisonment in 1967, Atherton escaped from prison. She was returned to prison in 1975. She escaped again approximately two months later and avoided the authorities for about twenty years. In 1995, Atherton was recaptured and returned to prison. She later sought post-conviction relief, claiming as follows: (1) that newly discovered evidence required vacation of her conviction; and (2) that her conviction of kidnapping under the accomplice liability theory violated due process and principles of equity because "the alleged underlying unlawful acts were neither charged by the state nor required to be

proven at trial in this matter." (R. 5, 18). The post-conviction court denied relief.

## DECISION

 Under the rules of post-conviction relief, the petitioner bears the burden of establishing her grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5); *Fleenor v. State,* 622 N.E.2d 140, 142 (Ind.1993), *cert. denied* 513 U.S. 999, 115 S.Ct. 507, 130 L.Ed.2d 415 (1994). When appealing from a denial of relief, a petitioner stands in the position of one appealing from a negative judgment. *Id.* In such cases, it is only where the evidence is without conflict and leads to but one conclusion, and the trial court has reached the opposite conclusion, that the decision will be disturbed for being contrary to law. *Id.* On appeal, we examine only the probative evidence which supports the post-conviction court's judgment, along with any reasonable inferences from that evidence. *Butler v. State,* 658 N.E.2d 72, 75 (Ind.1995). The post-conviction court, as trier of fact, is the sole judge of the evidence and the credibility of the witnesses. *Weatherford v. State,* 619 N.E.2d 915, 917 (Ind.1993).

 Atherton sought post-conviction relief in part on the grounds that her kidnapping conviction under the accomplice liability theory violated fundamental due process. The post-conviction court construed Atherton's argument as a challenge to the sufficiency of the evidence supporting her kidnapping conviction. Because sufficiency of the evidence was raised by Atherton on direct appeal, the post-conviction court concluded that the doctrine of res judicata precluded review of it in the post-conviction proceedings.

On appeal, Atherton claims that the post-conviction court erred in finding that her due process claim was barred by res judicata. Atherton summarizes her argument as follows:

Miss Atherton was convicted of kidnapping for the actions of another person. On direct appeal, appellate counsel asserted only that there was insufficient evidence for her conviction to stand. The Supreme Court reiterated its support for the long-

recognized theory of accomplice liability. But Miss Atherton is not challenging the doctrine of accomplice liability.

Very simply, Appellant seeks a ruling from This Court that a conviction for an offense based on the theory of accomplice liability for participation in another offense cannot lie where the alleged underlying unlawful act is not prosecuted by the state.

Appellant's Brief, p. 7.

In the proceedings below, Atherton did not specifically challenge the then-existing law regarding accomplice liability or the jury instructions regarding accomplice liability. Absent such a challenge, we find that the post-conviction court made the only plausible construction of Atherton's "due process" claim: a challenge to the sufficiency of the evidence underlying her conviction. Because this claim was raised by Atherton in her direct appeal, the post-conviction court properly concluded that doctrine of res judicata applied. *See Lowery v. State*, 640 N.E.2d 1031, 1037 (Ind.1994), *cert. denied* 516 U.S. 992, 116 S.Ct. 525, 133 L.Ed.2d 432 (1995).

■ To the extent that this court can understand Atherton's contention as being anything other than a challenge to the sufficiency of the evidence,[1] Atherton appears to claim that she cannot be convicted of kidnapping because even though she was an accomplice to a robbery that resulted in that kidnapping, none of the confederates were ever prosecuted for the underlying robbery. However, Atherton fails to cite any authority, either state or federal, in support of this due process claim. Generally, a party waives any issue raised on appeal where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record. Ind. Appellate Rule 8.3(A)(7); *Flynn v. State*, 702 N.E.2d 741, 744 (Ind.Ct. App.1998), *reh'g denied, trans. denied.* Therefore, Atherton has waived this argument on appeal.

■ Atherton next contends that the post-conviction court erred in finding that the

evidence discovered several years after her trial did not meet the nine-prong test for newly discovered evidence. The evidence that Atherton claims is newly-discovered is a 1975 affidavit allegedly executed by Wilbur Davis, Atherton's confederate. In the affidavit, Davis stated that he forced Atherton's participation in the events for which she was convicted. Davis further stated that he was sick and tired of Atherton having to suffer for an act that he committed.

■ In order for newly-discovered evidence to merit relief, the petitioner must establish each of the following:

(1) that the evidence was not available at trial; (2) that it is material and relevant; (3) that it is not cumulative; (4) that it is not merely impeaching; (5) that it is not privileged or incompetent; (6) that due diligence was used to discover it in time for trial; (7) that the evidence is worthy of credit; (8) that it can be produced upon a retrial of the case; and (9) that it will probably produce a difference result.

*Wisehart v. State*, 693 N.E.2d 23, 33–34 (Ind. 1998) (citing *Fox v. State*, 568 N.E.2d 1006, 1007 (Ind.1991)). As discussed below, we find that Atherton has not satisfied at least three of these requirements.

The post-conviction court determined that a copy of a questionable affidavit was not worthy of credit. As the court pointed out, the copy of the affidavit, which surfaced nearly twenty years after it was allegedly drafted, appears to have been executed by an individual who was convicted for the kidnapping, who had served a substantial portion of his sentence, and who may have been aware that he suffered from a fatal illness. Davis stood to lose nothing by executing the affidavit, and there is no evidence in the record that he can be held accountable for its contents. Further, there is a complete lack of evidence demonstrating the authenticity of the affidavit. There was absolutely no evidence that the signature on the affidavit in fact came from Davis.[2] Atherton could not

---

1. Indeed, the State, in its brief, also expressed difficulty in understanding Atherton's specific claim of error.

2. If Davis is in fact dead as Atherton speculated at the post-conviction hearing, Davis could not contest the contents of the affidavit or the validity of the signature.

testify when she received the affidavit and could only guess who mailed the affidavit to her. The post-conviction court's determination that the affidavit was unreliable and not worthy of credit is not clearly erroneous.

Further, Atherton's alleged newly-discovered evidence is mostly cumulative of other evidence presented at Atherton's trial. Atherton, Willis, and Murray each testified that Davis controlled Atherton and used a knife to force the others to participate in the crime. The copy of the affidavit allegedly drafted by Davis is merely cumulative of this testimony.

Atherton nevertheless claims that the substance of the affidavit is not cumulative under the reasoning of *Hirsch v. State*, 697 N.E.2d 37 (Ind.1998). In that case, Hirsch was convicted of involuntary manslaughter after he fatally wounded the victim during a fight. He claimed self-defense at trial. Our supreme court considered Hirsch's contention that the trial court erred in excluding his eyewitness account of the fight. *Id.* at 40. The court found that the exclusion of the testimony was not harmless error because Hirsch's eyewitness testimony was not cumulative to the testimony of "a third party merely relaying what Hirsch told him after the event." *Id.* at 41. The court further found that the third party's testimony was "qualitatively different from that of an eyewitness or one of the participants." *Id.* Unlike the situation in *Hirsch*, the affidavit allegedly executed by Davis is cumulative of the testimony of three eyewitnesses and participants in the crime, including Atherton. Furthermore, the post-conviction court in the present case expressly concluded that Davis' alleged affidavit was not worthy of credit. Therefore, the affidavit cannot be said to be qualitatively different from evidence admitted at Atherton's trial. At most, Davis' affidavit would be merely cumulative of evidence admitted at Atherton's trial.

 Finally, we agree with the post-conviction court's conclusion that Davis' affidavit, if introduced and admitted at a new trial, would not bring about a different result. The post-conviction court is to consider the weight that a reasonable trier of fact would give the newly-discovered evidence and evaluate the probable effect of this evidence in light of all the facts and circumstances of the original trial. *Bradford v. State*, 675 N.E.2d 296, 302 (Ind.1996), *reh'g denied.* As noted above, the jury convicted Atherton despite having heard evidence from the three other individuals accused of the kidnapping that Davis controlled Atherton during the kidnapping. Also, the alleged affidavit of a convicted co-defendant executed nearly thirteen years after the incident, in and of itself, is not worthy of credit. Therefore, the affidavit would probably not produce a different result. Atherton failed to meet her burden to show that the affidavit meets the standard for a new trial based on newly-discovered evidence.

We affirm.

KIRSCH, J., and BROOK, J., concur.