22CA0230 Peo v McCaughin 07-10-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA0230
Arapahoe County District Court No. 19CR1368
Honorable Elizabeth Weishaupl, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Joseph Dean McCaughin,

Defendant-Appellant.

---

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE SULLIVAN
Tow and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 10, 2025

---

Philip J. Weiser, Attorney General, Paul Koehler, Senior Counsel, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Stephen Arvin, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Joseph Dean McCaughin, appeals the judgment of conviction entered on a jury verdict finding him guilty of first degree extreme indifference murder.  We reverse and remand for a new trial.

## I.     Background

¶ 2     McCaughin shot and killed the victim, R.R., at a park during a confrontation among McCaughin, R.R., and two of R.R.'s friends.  The prosecution's theory of the case was that McCaughin shot R.R. out of jealousy because R.R. was dating his former girlfriend.  McCaughin asserted he acted in self-defense, claiming that he feared R.R. and his friends wanted to "jump" him.

¶ 3     According to McCaughin, one of R.R.'s friends brandished a knife while R.R. made a quick movement toward his waistband as if to reach for a gun.  Seeing this, McCaughin fired his pistol multiple times in R.R.'s direction, killing him.  Families with children were nearby in the park within McCaughin's general line of fire.  No gun was found on R.R.

¶ 4     At trial, McCaughin testified in his own defense.  He said he went to a donut shop the day before the shooting where he

encountered R.R. and his friends, one of whom threatened him by saying, "We'll be seeing you again."

¶ 5    McCaughin also testified that R.R. sent him threatening videos later that night from McCaughin's former girlfriend's Snapchat account.[1]  In McCaughin's telling, R.R. can be seen in the videos, alongside McCaughin's former girlfriend, "cussing and threatening" McCaughin.  McCaughin testified that R.R. threatened him in one of the videos by saying, "When I catch you, what's up, fuck you, when I see you, it's smoke."  The prosecutor objected on hearsay grounds, arguing that McCaughin was offering R.R.'s comment for the truth of the matter asserted.  Defense counsel countered that R.R.'s comment wasn't being offered for its truth but rather for its effect on McCaughin as the listener — specifically, how McCaughin felt threatened.

¶ 6    The district court sustained the prosecutor's objection, concluding that McCaughin was offering R.R.'s comment for its

---

[1] Snapchat is a mobile application that allows cell phone users to send photos and videos to their friends or contacts.  *People in Interest of R.C.*, 2016 COA 166, ¶ 3 n.1.  Typically, once the photo or video is sent to another person and viewed, it automatically deletes within a few seconds.  *Id.*

truth and that it therefore constituted inadmissible hearsay. As a result, the court struck McCaughin's previous answer and instructed the jury to disregard it. The court ruled that it would allow McCaughin to testify about the feelings the videos evoked so long as he stayed away from the specifics of R.R.'s comment.

¶ 7 A short time later, however, defense counsel attempted to elicit testimony from McCaughin that he felt concerned that R.R. might try to hurt him "[b]ecause of the videos that were sent." The prosecutor renewed his objection, arguing that McCaughin's "only basis for being scared is based on hearsay," so he couldn't testify to the feelings that the hearsay evoked. The court sustained the objection, struck McCaughin's response, and again instructed the jury to disregard his answer.

¶ 8 As relevant to this appeal, and consistent with its prior hearsay rulings, the court sustained two other objections by the prosecutor. First, defense counsel asked McCaughin, "And you were also concerned that he might have a gun based on kind of what had happened the night before?" When McCaughin answered "yes," the prosecution objected on the same grounds as before. The court sustained the objection. Second, the prosecution objected

again when McCaughin testified that he shot R.R., in part, because of the "threats [R.R.] made the night before." Once again, the court struck McCaughin's response about the "threats the night before" and instructed the jury to disregard his answer.

¶ 9    Later the same day, outside the jury's presence but before McCaughin's testimony had concluded, defense counsel made an offer of proof regarding McCaughin's excluded testimony. He explained that McCaughin would have testified that he (1) interpreted R.R.'s use of "smoke" as a reference to a gun or "gunplay" and (2) believed, based on the comment, that R.R. possessed a gun while at the park the following day.

¶ 10    McCaughin also testified that one of R.R.'s friends called him names while at the park, causing him to feel threatened. During the prosecutor's cross-examination of McCaughin, McCaughin conceded that name-calling alone isn't sufficient to justify deadly physical force in self-defense. McCaughin also admitted that R.R. hadn't explicitly threatened to shoot him in the moments just before McCaughin fired his pistol. Although the prosecutor asked McCaughin about the alleged Snapchat videos, he didn't allow

McCaughin to relay what R.R. had said or how McCaughin interpreted R.R.'s comment.

¶ 11 In closing argument, the prosecutor emphasized that the court had excluded evidence of the Snapchat videos, so they couldn't be considered when assessing McCaughin's claim of self-defense. The following remarks are illustrative:

- "[O]ne of the biggest deceits of all is when he tells you that Snapchats were sent to him that evening. . . . But more importantly, these Snapchats did not come into evidence. . . . [Y]ou don't know what was in the Snapchats. . . . [Y]ou can't assess if his scaredness is a result of something reasonable."

- "When the [d]efense stands up here and asks you, 'Well, remember the Snapchats,' they are asking you to speculate because there is zero evidence of what these Snapchats were . . . . There's a reason certain evidence does not come into trial, and this is not something you should consider."

- "He wasn't scared. He has shown that he wasn't scared because he was going toe-to-toe with [R.R]."

5

- "[T]here are no actual verbal threats said. . . . [R.R.] doesn't once say, 'I'm gonna come kick your ass.' [R.R.] doesn't once say, 'I'm gonna pull a gun.'"

¶ 12    The jury found McCaughin guilty of first degree extreme indifference murder and second degree murder, but it acquitted him of attempted first degree murder. The court merged the second degree murder conviction into the first degree murder conviction and sentenced McCaughin to life in prison without the possibility of parole.

## II.    Discussion

¶ 13    McCaughin raises several contentions on appeal, including that the district court erred by excluding McCaughin's testimony regarding R.R.'s threatening comment in one of the Snapchat videos and the feelings the videos evoked. Because our resolution of this issue is dispositive, we need not reach McCaughin's remaining contentions.

### A.    Standard of Review and Applicable Law

¶ 14    We review a district court's evidentiary rulings for an abuse of discretion. *People v. Meils*, 2019 COA 180, ¶ 11. A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or

6

unfair, or based on an erroneous understanding or application of the law. *People v. Scott*, 2021 COA 71, ¶ 23.

¶ 15　Because McCaughin preserved his evidentiary challenge, we review any error in the court's ruling for nonconstitutional harmless error. *Hagos v. People*, 2012 CO 63, ¶ 12. Under this standard, we will reverse only if a reasonable probability exists that the court's error contributed to the defendant's conviction. *People v. Roman*, 2017 CO 70, ¶ 13.

¶ 16　Hearsay is "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." CRE 801(c). Absent an exception, hearsay is generally inadmissible. CRE 802. But if an out-of-court statement isn't offered for its truth, the statement is admissible as nonhearsay evidence so long as the statement is relevant. *People v. Van Meter*, 2018 COA 13, ¶ 64. An out-of-court statement offered solely to show its effect on the listener, for example, isn't hearsay. *People v. Knapp*, 2020 COA 107, ¶ 36. The proponent's purpose for offering the statement, not the details reflected in the statement, determines whether the statement is

hearsay. *People v. Robinson*, 226 P.3d 1145, 1152 (Colo. App. 2009).

## B.    Analysis

¶ 17    We conclude that the district court erred by excluding McCaughin's testimony regarding R.R.'s comment in one of the Snapchat videos and the feelings the videos evoked. We further conclude that a reasonable probability exists that the court's error contributed to McCaughin's conviction.

### 1.    The Error

¶ 18    Defense counsel argued that he was offering R.R.'s comment not for its truth — that R.R. actually threatened McCaughin or intended to harm him — but rather for its effect on McCaughin. In particular, defense counsel said that McCaughin would testify that he (1) interpreted "smoke" to mean "gun" or "gunplay" based on others' past references to "smoke"; (2) reasonably believed that R.R. had a gun; and (3) felt threatened by R.R.'s comment.

¶ 19    We agree with McCaughin that R.R.'s comment wasn't offered for its truth because its relevance didn't turn on whether the comment was true or not. Rather, R.R.'s uttering of the comment and the apprehension of danger it produced in McCaughin are what

mattered. As a result, R.R.'s comment was admissible as nonhearsay to show its effect on McCaughin as the listener. *See Robinson*, 226 P.3d at 1152; *see also Knapp*, ¶ 37 (declarant's out-of-court statement calling the defendant a "wife beater" was admissible as nonhearsay to show its enraging effect on the defendant); *People v. Flores*, 539 P.2d 1236, 1237 (Colo. 1975) (reversing conviction where evidence regarding decedent's prior acts of violence should have been admitted as nonhearsay "in support of the defendant's self-defense theory to establish his fear of the decedent").

¶ 20    The People argue otherwise, asserting that McCaughin's "only interest" in admitting the comment was for its truth — namely, that R.R. "in fact threatened" McCaughin. But well-settled law backed up defense counsel's stated nonhearsay purpose. Indeed, in self-defense cases, a threatening statement communicated by the person killed or assaulted isn't hearsay "[i]f offered to show the defendant's reasonable apprehension of danger." 2 Kenneth S. Broun et al., *McCormick on Evidence* § 249, Westlaw (Robert P. Mosteller ed., 9th ed. database updated Feb. 2025); *see also Flores*, 539 P.2d at 1237; *Hirsch v. State*, 697 N.E.2d 37, 40-41 (Ind. 1998)

(victim's statement that he refused to stop fighting was admissible as nonhearsay to show the defendant's reasonable apprehension of death or great bodily harm); *State v. Hendrix*, 699 S.W.2d 779, 781 (Mo. Ct. App. 1985) ("[W]here self-defense is an issue, evidence of communicated and uncommunicated threats made by the victim of an assault or murder are admissible in evidence to explain the conduct and apprehension of the defendant . . . .").

¶ 21    To the extent the prosecution harbored concerns that the jury might misuse the evidence for an improper purpose, its remedy was to seek an appropriate limiting instruction, not wholesale exclusion of the evidence.  *See Robinson*, 226 P.3d at 1153 (citing CRE 105).

¶ 22    Accordingly, we conclude that the district court abused its discretion by sustaining the prosecution's hearsay objections.

## 2.    The Remedy

¶ 23    Having concluded that the court erred, we must determine whether the error requires reversal.  Based on the record and briefing before us, we aren't persuaded that the People have proved that the court's error was harmless.  *See James v. People*, 2018 CO 72, ¶ 19.  On the contrary, two central themes pressed by the prosecution were that (1) McCaughin unreasonably believed, or

didn't believe, that R.R. had a gun; and (2) based on the admitted evidence, McCaughin's asserted fear of R.R. was unsubstantiated and not credible.

¶ 24 While cross-examining McCaughin, for example, the prosecutor emphasized that "something more" than mere name-calling is necessary to justify self-defense. McCaughin agreed, but by that point the court had already prohibited him from mentioning what "more" existed: R.R.'s threatening comment. The prosecutor also succeeded in getting McCaughin to admit that, at the time of the shooting, R.R. hadn't verbalized, "I'm going to shoot you." Without the added context of R.R.'s threatening comment from one day earlier, this testimony significantly strengthened the prosecution's position that McCaughin acted unreasonably by shooting R.R. *See Castillo v. People*, 2018 CO 62, ¶ 38 (the "touchstone of self-defense" is the defendant's reasonable belief that defensive force is necessary).

¶ 25 The prosecution continued its themes in closing argument, again leveraging the excluded evidence to argue that McCaughin acted unreasonably. The prosecutor repeatedly emphasized, among other things, that the Snapchat videos hadn't been admitted into

11

evidence, that the jury couldn't consider the Snapchat videos when evaluating the reasonableness of McCaughin's actions, that McCaughin wasn't scared of R.R., and that no evidence suggested that R.R. had said "I'm gonna pull a gun" or had otherwise verbally threatened McCaughin.

¶ 26 Given the prosecution's heavy reliance on the absence of R.R.'s threatening comment, we conclude that a reasonable probability exists that the court's erroneous hearsay rulings contributed to McCaughin's conviction. *See Roman*, ¶ 13.

¶ 27 In arguing that the error was harmless, the People contend that McCaughin was still able to testify that he generally felt threatened by (1) the Snapchat videos and (2) the conduct of R.R. and his friends during the events leading up to the shooting. We aren't so sure. On three separate occasions, McCaughin attempted to explain, without using R.R.'s exact words, how he felt concerned and threatened based on the events that occurred the night before the shooting. The prosecutor objected each time. The court sustained the objections and, in two instances, explicitly struck McCaughin's responses and instructed the jury to disregard his

answers.  We presume that the jury followed the court's instructions.  *People v. Tillery*, 231 P.3d 36, 43 (Colo. App. 2009).

¶ 28     In addition, the court's hearsay rulings effectively precluded the jury from hearing any evidence about R.R.'s specific "smoke" comment and why McCaughin interpreted it as a threat with a gun. Without the concrete details of R.R.'s threatening comment, the jury couldn't fully assess the reasonableness of McCaughin's belief that R.R. had a gun and posed an imminent danger that justified the use of deadly physical force.  *See* § 18-1-704(2), C.R.S. 2024; *People v. Schnorenberg*, 2025 CO 43, ¶¶ 54-55 (erroneous exclusion of the defendant's testimony regarding his securities lawyer's advice wasn't harmless because, although the defendant could testify in "general terms" about the advice, what his lawyer "actually told him" was central to his defense that he lacked the required mental state).  At minimum, the jury may well have viewed McCaughin's defensive actions through a different lens — and found them reasonable — had it been fully apprised of R.R.'s threat from the day before.  *See People v. Degrave*, 2023 IL App (1st) 192479, ¶ 56 ("The reasonableness of the defendant's actions vis-à-vis the alleged victim might be cast in a different light if the defendant knew of the

13

victim's proclivity toward violence."). And because reasonableness is the "touchstone" of self-defense, *Castillo*, ¶ 38, we can't say that the court's error in excluding R.R.'s threatening comment was harmless.

¶ 29     The People also argue that the court's error in truncating McCaughin's self-defense claim was rendered harmless because the jury found him guilty of first degree extreme indifference murder. To support this argument, the People rely on the supreme court's statement in *People v. Pickering*, 276 P.3d 553, 556 (Colo. 2011), that acts committed with extreme indifference "are 'totally inconsistent' with self-defense." *Id.* (citation omitted). But the *Pickering* court made clear that a defendant may assert self-defense as an element-negating traverse in cases involving extreme indifference crimes. *Id.* Given this, a court's error in curtailing a defendant's self-defense claim isn't insulated from reversal simply

because the jury found the defendant guilty of an extreme indifference crime.[2]

¶ 30    Accordingly, because the court abused its discretion by excluding evidence of R.R.'s comment and its error wasn't harmless, we reverse the judgment of conviction and remand the case for a new trial.  We need not address McCaughin's remaining contentions since they may not arise on remand.  *See People v. Cook*, 197 P.3d 269, 277 (Colo. App. 2008).

## III.    Disposition

¶ 31    McCaughin's conviction for first degree extreme indifference murder is reversed, and the case is remanded for a new trial.

JUDGE TOW and JUDGE YUN concur.

---

[2] Although our analysis focuses on the court's error in truncating McCaughin's self-defense claim as it pertains to the first degree extreme indifference murder charge, we note that the court's error also isn't harmless as it relates to the second degree murder charge. *See People v. Pickering*, 276 P.3d 553, 555 (Colo. 2011) (self-defense is an affirmative defense to second degree murder).